Moncure, P.,
delivered the opinion, of the court.
This is a writ of error to a judgment of the Circuit court of Clarke county, convicting Lyeurgus Little of murder in the second degree, and sentencing him therefor to confinement in the penitentiary for the term of fourteen years, the period by the jurors in their verdict ascertained. # There are seven assignments of error in the judgment, which arise on as many bills of exceptions taken to opifiions of the court given during the progress of the trial. We will consider the questions thus presented for the decision of this court, or such of them as it may be necessary for us to decide, or as we may think it proper to decide, in the order in which they arise on the bills of exceptions.
1. The first bill of exceptions was taken by the-prisoner to the action and ruling of the court in overruling his objection to William A. Riely as a competent juror for his trial. It is very clear that the objection was invalid, and the juror was competent, and that there was no error of the court in this respect. Jackson’s case, 23 Gratt. pp. 919, 927-933, and the-cases there cited. Indeed, this objection, though taken in the court below, does not seem to be relied on in this court.
2. The second bill of exceptions was taken by the-prisoner to the ruling of the court in excluding, as-incompetent evidence, a statement of the prisoner, made to Miss Hattie Prichard, a witness introduced by the commonwealth; the prisoner, by his counsel, contending that the statement was admissible as part of the res gestee.
The surrounding circumstances of a fact in controversy are generally admissible evidence as reasonably tending to explain the nature of such fact, even. *924 though such circumstances consist of mere deelara0 tions, and be of the character of hearsay evidence. “ These surrounding circumstances,” says Greenleaf, “constituting parts of the res gestee, may always be shown to the jury along with the principal fact; and their admissibility is determined by the judge, according to the degree of their relation to that fact, and in the exercise of his sound discretion; it being extremely difficult, if not impossible, to bring this class of cases within the limits of s a more particular description. The principal points of attention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether- they were so connected with it as to illustrate its character. Thus, on the trial of Lord George Gordon for treason, the cry of the mob who accompanied the prisoner on his enterprise was received in evidence as forming part of the res gestee, and showing the character of the 'principal fact.” 1 Greenl. on Ev., § 108.
Sow let us apply the principle as thus laid down to this case, which is thus stated in the second bill of exceptions. The commonwealth proved that Clinton Little came to his death by a wound received in the basement of the house, and that the door leading to said basement entered upon the south side of the house, under a porch; and introduced a witness, Miss Hattie Prichard, who testified that on the morning of the 5th of July 1878, after having breakfasted at the usual hour, she, in company with Amanda, the sister of the deceased, and Miss Villary, had gone to an apple tree in the garden, not a great distance from the house; it was the first tree in the garden; that there was a fence between the yard and garden; that she remained but a short time at the tree—about five min *925 utes—likely not that long; whilst there she heard shots fired; it seemed as if only one shot; from the sound it must have been from the basement; when she heard the sound she came to the house; the ice house obstructed the view; “when I got to the yard I saw Columbus and Gilbert Little in the south porch, that looks towards the stable; I call it the back porch; I saw Oscar Little and the prisoner at the bar in a slow walk, not in a run, going towards the stable; in a minute, m a second, they came back;” “I do not know what caused them to return; Columbus and Gilbert were walking around carelessly; Columbus had a pistol in each hand; Gilbert had a gun; don’t know what sort; they had left the porch; when the prisoner and Oscar came back, Oscar was wounded; he was limping, which I then first observed; the prisoner told me when I met them”— The attorney for the commonwealth, at this point in the evidence of the witness, objected to her repeating the statement of the prisoner then made. The prisoner, by his counsel, moved the court that the witness be allowed to repeat the statement as part of the res gestae, but the court oveiTuled said motion, and excluded said statement.
We think that the court erred in refusing to permit the witness to state what was said by the prisoner on the occasion referred to. What was so said might well have been, in whole or in part, admissible evidence, either for or against the prisoner. It was very closely connected, both in time and place, with the homicide, which was the subject of the prosecution, and might well have tended to elucidate that fact as part of the res gestae. It was said when the deceased was lying close by, in a dying state, from the effect of the wounds he had received, and in the presence, and it seems the hearing, of Columbus and Gilbert Little, *926 the former of whom had a pistol in each hand and the _ r latter a gun in his hand, and also in the presence and of Oscar Little, who was also wounded. It is n°l probable that the prisoner had either time or motive to fabricate a statement under such circumstances. There were present on that occasion those who were eye-witnesses to the homicide, and who could disprove any misstatement which the prisoner might have made in regard to it. As the commonwealth did not, as she might have done, produce those eye-witnesses to teatify upon the trial, it seems to be more reasonable on that account, that the statement made by the prisoner at the time of the transaction should not be excluded. At all events, that statement ought to have been heard by the court below, so that that court might determine whether all or any part of it was admissible evidence, and this court might revise the judgment in that respect. We certainly cannot say, a priori, that no part of that statement could have been legal evidence. It would have been competent for the court, after hearing the evidence, to exclude the whole or any part of it, if illegal; and it would have devolved on the jury to attach to the statement, or so much of it as the court might have held to be admissible, only so much weight as they might have considered it entitled to. The question of credibility of the evidence being one exclusively for the jury.
3. The third assignment of error is the subject of the third bill of exceptions, and is, that “ the court erred in refusing to allow James F. Milton, jr., to be recalled for the purpose of enabling the prisoner to ask him a question with a view to impeaching his testimony, and also to show malice on the part of said Milton towards the prisoner; it appearing that this ■evidence was only discovered after the said Milton had *927 left the stand, and after the commonwealth had closed 7 its evidence.” It does not appear from the bill of exceptions, on what ground the court refused to the witness, Milton, to be recalled, though the petition for the writ of error states, that “the ground taken by the court in refusing to allow the witness to be recalled was, that the application came too late, although it appeared by the affidavit of Mr. Hesser (which is set out in the bill of exceptions), and by the averment of counsel, that the proposed evidence was just discovered.” But in the view of the court it is immaterial whether the refusal was upon that ground or not, and that whether it was or not, the court erred in so refusing.
“The credit of a witness,” says G-reenleaf, “may also be impeached by proof that he has made statements out of court contrary to what he has testified at the trial. But it is only in such matters as are relevant to the issue, that the witness can be contradicted; and before this can be done, it is generally held necessary, in the case of verbal statements, first to ask him as to the time, place and person involved in the -supposed contradiction. It is not enough to ask him the general question whether he has ever said so and so, nor whether he has always told the same story, because it may frequently happen that, upon the general question, he may not remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said. This course of proceeding is considered indispensable, from a sense of justice to the witness; for as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the *928 facts, and, if necessary, to correct the statement already given, as well as by a re-examination to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said.” 1 Greenl. on Ev., § 462.
In the Queen’s case, 2 Brod. & Bing. R. 313, this subject was very much discussed, and the rule and the reason of it were' laid down to the same effect in the unanimous opinion of the learned judges, which was delivered by Abbott O. J. See that part of the opinion set out in note 1 to 1 Greenl. on Ev., § 462. In the United States the same course has been generally adopted, as appears from the cases cited in the same note. Though in Massachusetts and some of the other states the rule appears to be different, as appears from cases also cited in the same note. In this state the existence of the rule was affirmed in Unis &c. v. Charlton’s adm’or &c., 12 Gratt. 484, 494, in which the question was for the first time distinctly presented to this court for its decision; though no doubt always our practice has conformed to the rule as laid down by Greenleaf, which we consider a good rule, and one that ought to prevail heré. Conceding that it is our rule, we think that the court ought to have permitted the witness to be recalled, in order to comply with the requisition of the rule. Certainly it ought, if, as is alleged, the prisoner and his counsel were uninformed of the fact set forth in the affidavit of Hesser until after the witness, Milton, had left the stand. But the court ought to have given such permission, even if the fact was known to the prisoner and his counsel before the said witness had left the stand, and the omission then to ask the question of him was a mere oversight. The testimony of that witness was all important, and upon the question of his credibility depended do doubt *929 the issue of life and death, which the jury had to determine. It would have been very unreasonable to make the life of a human being; depend upon a mere ~ rule of practice adopted for the sake of convenience only. But in fact the rule is founded on a sense of justice to the witness, and was established for his benefit. If it could be considered that the rule does not exist here (as it certainly does), then the prisoner would have had a right to introduce Hesser when he offered to do so, for, the purpose of contradicting the witness for the commonwealth. So, that in any view of the rule, and whether it be considered as existing here or not as a rule of practice, the court certainly erred either in .refusing to permit the witness, Milton, to be recalled as aforesaid, or in refusing to permit Hesser to be examined as a witness to contradict the testimony of Milton, if in fact the court did so refuse, as seems to have been the case.
4. The fourth assignment of error is the subject of the fourth bill of exceptions, and is that the court refused “to permit the prisoner to prove by Col. Washington Dearmont that the witness, James F. Milton, Jr., had made before the grand jury that indicted the prisoner, a statement of the alleged confession, altogether different from the statement made by him at the trial; and that he did not make before said grand “ jury the statement made by him” at said trial.
It does not appear from the bill of exceptions what was the ground of the court’s refusal; but in the petition for the writ of error it is said that “the court refused to permit Col. Dearmont to prove what Milton had stated in the grand-jury room, upon the ground that such testimony was contrary to public policy.” We can conceive of no other ground on which such refusal could have been based.
*930 We are of opinion that the court erred in such refusal, whatever may have been the ground on which it was based. The proceedings of grand jurors seem to be regarded as privileged communications, and' upon grounds of public policy. “It is the policy of the law,” says Greenleaf, “that the preliminary enquiry as to the guilt or innocence of a party accused should be secretly conducted. And in furtherance of this object,” he further says, “ every grand juror is sworn to secrecy.” 1 Greenl. on Ev., § 252. And by Bigelow, J., in Commonwealth v. Hill, 11 Cush. R. 137, 140, it is said, that “ the extent of the limitation upon the testimony of grand jurors is best defined by the terms of their oath of office, by which the commonwealth’s counsel, their fellows, and their own, they are to keep secret.” But the form of the oath required by our law to be administered to grand juries is very different, and they are not required to be sworn to secrecy. Code, ch. 200, § 6, p. 1237. If the obligation of secrecy arises alone from the form of the oath, there is therefore no such obligation in this state. But the rule for the exclusion of such evidence is, no doubt, not founded alone on the form of the oath, but also upon public policy. It has not been precisely determined, however, how far the rule extends, and what is the reason of it. “ One reason,”, says Greenleaf, “may be to prevent the escape of the party should he know that proceedings were in train against him; another may be to secure freedom of deliberation and opinion among the grand jurors, which would be impaired if the part taken by each might be made known to the accused. A third reason may be to prevent the testimony produced before them from being contradicted at the trial of the indictment by subornation of perjury on the part of the accused.” *931 1 Greenl. on Ev., § 252. Hone of these reasons seem to require or authorize the exclusion even of a grand juror as a competent witness to prove that a statement made by a person before the grand jury on the finding of an indictment, was different from the statement made by the same person before the jury on' the trial of the indictment. And in 4 Chitty’s Bl., p. 126, note 4, it is said—that a few years ago, at York, a gentleman of the grand jury heard a witness swear in court upon the trial of a prisoner directly contrary to the evidence which he had given before the grand .jury. He immediately communicated the circumstance to the judge, who, upon consulting the judge in the other court, was of opinion that public justice in this case required that the evidence which the witness had given before the grand jury should be disclosed, and the witness was committed for perjury, to be tried upon the testimony of the gentlemen of the grand jury. It was held, the object of this concealment was only to prevent the. testimony produced before them from being counteracted by subornation of perjury on the part of the persons against whom bills were found. This is a privilege which may be waived by the crown. See 1 Chit. Cr. Law p. 317, mai’g. Such seems to have been held to be the law even in England, where, by the express terms of the grand juror’s oath, he is bound to secrecy. It cannot be said, therefore, at least as a matter free from grave ■doubt, that even if the witness in this case had been one of the grand jury that found the indictment, he would have been incompetent to testify as to the evidence of the witness Milton before the grand jury.
But, however that may be (and we do not mean to decide the question, because it is unnecessary in this ■case), we consider it very clear that Dearmont was a *932 comPetent witness to testify as to the said evidence,. and ought not to have been excluded by the court. Though the rule has been said to include not only the grand jurors themselves, but their clerk, if they have one, and the prosecuting officer, if he is present at their deliberations; all these being equally concerned in the administration of the same portion of penal law; 1 Greenl. on Ev. § 252; yet it has been expressly held, in England, on the trial of an indictment for perjury committed in giving evidence before the grand jury,' that another person who was present as a witness in the same matter, at the same time, is competent to-testify to what the prisoner said before the grand jury; and that a police officer in waiting was competent for the same purpose; neither of these being sworn to secrecy. Regina v. Hughes, 1 Car. & Kir. R. 519; cited in note 4 to 1 Greenl. supra. This case comes directly within the principle of that decision, and if it be sound law, as we think it is, it follows, a fortiori, that the testimony of Dearmontwas competent for the purpose for which it was offered in this case.
5. The fifth assignment of error is the subject of the fifth bill of exceptions, and is that “the court erred in ruling that the question put to the witness James E. Milton, Jr., by counsel for the prisoner, viz: If he Milton, had not stated on last Wednesday, on the front porch of the courthouse, in conversation with two gentlemen whose names were not known, ‘ If I had my way I would kill the damned rascals,’ referring to the prisoners, was improper, and in excluding the same on the ground that the names of the two gentlemen were not given.”
The question presented by the fifth bill of exceptions is not accurately stated in the fifth assignment of' error, though the effect is the same. It appears from *933 the bill of exceptions that the question was actually-put to and answered by the witness Milton; and that William Lewis, .a witness for the prisoner, was asked if he had not heard said Milton, at the time and place ■ referred to in the above interrogatory, in a conversation with two gentlemen (whose names the counsel for the prisoner stated were not known at the time the above question was asked said Milton, and had not been ascertained till afterwards), make use of the expression quoted in the above interrogatory. To which question the attorney for the commonwealth objected, and the court sustained the objection, upon the ground that a proper foundation had not been laid for the question by informing -the witness of the names of the persons with whom the alleged conversation was held, and would not permit the witness to answer. To which ruling of the court the prisoner, by his counsel, excepted.
We think that the court erred in so ruling; and that there was a sufficient specification as to the time, place and persons involved in the supposed contradiction, within the meaning of the law on this subject. 1 Greenl. on Ev. § 462. The names of the persons could not be given because it appears they were unknown ; but they were otherwise sufficiently described, and that is -all that the law requires.
6. The sixth bill of exceptions was taken to the refusal of the court to set aside the verdict and grant a new trial, upon the ground that the verdict was contrary to the evidence; which is the subject of the first •assignment of error. The facts proved in the case are certified in the bill of exceptions, except that in some respects therein stated the testimony was conflicting, in which respects, therefore, the facts were not certified.
*934 We think it very clear that the refusal of the court to set aside the verdict and grant a new trial affords no-good ground for reversing the judgment, according to the well settled law of this state, as may be seen by reference to Read’s case, 22 Gratt. 924, in which all the-1 other cases on the subject are referred to. We deem it unnecessary to say anything further on this subject.
7. The question presented by the sixth assignment of error and the seventh bill of exceptions (both of which present the same question), is rendered immaterial by our decision of the question arising on the-third assignment of error, and we will therefore take-no further notice of it.
8. The last assignment of error is, that “it is not proven that the felony with which the prisoner was charged was committed within the county of Clarke, as the indictment alleges, or within the jurisdiction of the court that tried him.”
No notice was taken of any such point in the court below, but it is noticed for the first time in the petition for a writ of error. Had it been noticed in the-court below, the alleged defect would no doubt have been at once supplied. The omission in the proof, if any, was a mere oversight. The prisoner is charged in the indictment with committing the offence in the-county of Clarke. It was proved that the act was done in the house of Franklin Little, the father of the prisoner and the deceased, the location of which in the-county of Clarke was no doubt notorious to all the jury and all the parties concerned in the trial. The jury found the prisoner guilty of committing the of-fence in the county of Clarke, as charged in the indictment. And we think the ground relied on in the last assignment of error for the reversal of the judgment,, is insufficient for that purpose.
*935 But upon the grounds relied on in the second, third, fourth and fifth assignments of error and bills of exceptions, as aforesaid, we think the judgment is erro-' neous and ought to be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had therein in conformity with the foregoing opinion.
The judgment was as follows:
This day came as well the plaintiff in error by counsel, as the attorney general on behalf of the commonwealth, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the Circuit court erred in refusing to permit the witness, Miss Hattie Prichard, to repeat the statement made to her by the prisoner as mentioned in the second bill of exceptions. That statement might well have been, in whole or in part, admissible evidence, either for or against the prisoner. It was very closely connected, both in time and place, with the homicide, which was the subject of the prosecution, and might well have tended to elucidate that fact as part of the res gestee. It was made when the deceased was lying close by in a dying state from the effects of the wounds he had received, and was made in the presence, and no doubt in the hearing, of those who, it seems, were eye-witnesses to the homicide, but who were not examined by the commonwealth as witnesses in regard to the same. At all events, that statement ought to have been heard by the court below, so that such court might determine whether all or any part of it was admissible evidence, and this court might re *936 vise the judgment in that respect. We certainly cannot say a priori, that no part of that statement could have been legal evidence. It would have been competent for the court, after hearing the statement, to exclude the whole or any part of it if illegal; and it would have devolved on the jury to attach to the statement, or so much of it as the court might have held to be admissible, only so much weight as they considered it entitled to.
The court is further of opinion that the Circuit court erred in overruling the motion of the prisoner, that the witness James F. Milton,'Jr., might be again put on the stand for the purpose of allowing the prisoner to cross-examine him with a view to his contradiction, as mentioned in the third bill of exceptions.
The court is further of opinion that the Circuit court erred in refusing to permit Washington Dearmont, a witness introduced in behalf of the prisoner, to state what the witness James F. Milton, jr., said before the grand jury, as mentioned in the fourth bill of exceptions.
The Court is further of opinion that .the Circuit court erred in sustaining the objection of the attorney for the commonwealth to the question propounded to William Lewis, a witness for the prisoner, as mentioned in the fifth bill of exceptions.
The court is further of opinion that there is no error of the court in any of its other rulings in this cause, except that this court does not decide the question presented by the seventh bill of exceptions, the decision of. which is unnecessary. Therefore, for the reasons aforesaid, it is considered by the court that the said judgment of the Circuit court be reversed and annulled, that the verdict of the jury be set aside, and that the cause be remanded to the said Circuit *937 •court for a new trial to be had therein in conformity with the foregoing opinion. Which is ordered to be •certified to the said Circuit court of Clarke county.
Judgment reversed.