JOHN O'SHIELDS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. *Res gestæ* embrace the sayings of the parties within two to five minutes of the transaction which resulted in the homicide, and before preparation for

O'Shields vs. The State of Georgia.

defense could probably have been in the mind of the party speaking, especially if the sayings are against the interest of the speaker; but if he be a witness and has been sworn, and testified to the same facts which would have been proven by his sayings, the rejection of the sayings is not such error as will require a new trial on that ground.

2. When the facts proven in any view which can be taken of them, cannot make a case of involuntary manslaughter, it is not error to decline to charge thereon.

3. A new trial will not be granted on the ground of alleged partiality of a juror, on the affidavit of one witness, when the juror proves by a by-stander that he did not mention the name of the defendant, that all that he said was in jest, and when the juror purges himself by affidavit of all bias, and swears that he never had quarrel or cause of quarrel with defendant, but has always entertained good feeling towards him and was perfectly impartial between him and the state.

4. It is the duty of the court to reinstruct the jury on any question of law arising on the facts proven on which they say they are in doubt, at their request, and in such a case he is not bound to recharge them on the whole law of the case. He may properly confine himself to the point on which the jury ask to be enlightened.

5. It is proper for the court to provide the jury with medicine and such necessaries as can be furnished them without their exposure to outside influence.

6. When witnesses are examined in respect to the condition of the pistol used in the homicide, and on the point whether or not defendant shot at deceased, all additional evidence on these points is merely cumulative, and a new trial for newly discovered testimony will not be granted on such evidence.

7. Though the court does not charge on the point of whether or not the defendant shot and killed the deceased in the language of a written request, yet if he repeatedly submit that question to the jury in the charge given, and tell them that they must be satisfied of his guilt beyond a reasonable doubt, and this court is satisfied that the substance of the charge requested was given, and defendant was not hurt by the neglect to give it in the language requested, this court will not order a new trial on that ground.

8. Where the charge fully and fairly submits the whole law of the case to the jury, and they find the defendant guilty, and the court below is satisfied with the verdict, and this court sees sufficient evidence in the record to sustain the verdict, though the evidence be conflicting, this court will not control the discretion of the court below in refusing to grant a new trial.

Criminal law. Evidence. *Res gestæ*. Charge of Court. New trial. Jury. Before Judge HOPKINS. Fulton Superior Court. May Term, 1875.

Reported in the opinion.

VOL. LV. 45.

GARTRELL & STEPHENS; W. A. SHORTER; T. P. WEST-MORELAND; W. F. WRIGHT, for plaintiff in error.

JOHN T. GLENN, solicitor general, for the state.

JACKSON, Judge.

The defendant was indicted for the murder of H. D. Fleming, was found guilty of voluntary manslaughter, and moved for a new trial on various grounds disclosed in the record; the motion was refused on all the grounds, and defendant excepted and assigns error on them all.

The defendant was a policeman, and in company with Jones, another policeman, was on a sidewalk waiting for the time to light or put out lamps on the rising or setting of the moon. Fleming was lying down on the sidewalk, defendant passed by and looked or peeped in his face. Defendant said to him he had better go off or he would be kicked off; deceased made some reply angrily, when defendant said he thought it was a negro or he would not have made the remark. Deceased was drinking, and the policemen talked after he left about seeing him home or putting him in the guard-house. Deceased went to his brother's, waked him up, told him he had been insulted, and asked him to go with him and see him have satisfaction. He and his brother went back. On their way, deceased jerked a piece of paling, two or three inches wide and one thick and some four feet long, and carried it along. They soon met the two policemen, good-evening was said, when deceased made some angry remark and struck at Jones with the paling hitting O'Shields. The two policemen ran in directions somewhat opposite; deceased and brother were fired upon, and deceased was killed by a pistol ball. The firing was done at some distance from the Flemings. Jones had a pistol which carried a larger ball than defendant's. Two balls of different sizes were picked up at the house against which they rebounded or in which they lodged. The smaller ball could be pushed into the hole in the body of deceased made by

O'Shields *vs*. The State of Georgia.

the shot which killed ; the larger could not. There is some conflict as to the number of shots fired ; some witnesses saying three, and one of them four shots; and some on the question whether deceased was advancing on Jones when shot. Jones swore, too, that he shot and killed deceased, and that defendant did not; but the proof is that they were in different parts of the street, and the Flemings rather between them; and Jones thought and swore that the Flemings, one of them, fired at him; but the proof is conclusive that they were unarmed and did not fire. I have been thus particular in summing up the testimony, because one ground of error is, that the court should have granted the new trial because the verdict is against evidence and without evidence to support it. We do not think so. The smaller ball killed Fleming. O'Shields' pistol carried the smaller ball. Jones says O'Shields did not fire, but he was nearly opposite to O'Shields, and thought some one shot at him. Neither of the Flemings shot or had anything with which to shoot. The conclusion is almost irresistible that Jones mistook the fire of O'Shields at the Flemings for a shot from one of them at him, and this reconciles the evidence. Besides three witnesses swear that O'Shields did shoot; that shots were fired from his stand-point as well as that of Jones ; and two balls of different sizes being found rebounded from the wall of the house, would seem to put the evidence beyond doubt that defendant shot, and that his shot killed the deceased.

Is the verdict contrary to law? If his pistol shot killed. Fleming, was he justifiable in it? There is no pretense that deceased was advancing upon defendant. There is some evidence that he was advancing upon Jones, though the weight of the evidence is that he was not advancing at all. If he was advancing on Jones, O'Shields could not have been reasonably apprehensive that a felonious assault was about to be made upon him, and that he was in danger of life or limb. Whilst, under some circumstances, a policeman might be justifiable in defending his colleague, and even in using deadly

weapons in his defense, we do not believe that the facts here warrant such use of the pistol by O'Shields. The danger from the Flemings seems to have been over, the policemen had got out of the way, and were shooting, as it seems to us, not in defense of each other, but aggressively upon men who turned out to be wholly unarmed, except with the plank. It is true, they were attacked and attacked at night, and violently and suddenly assailed. This circumstance might mitigate, but it cannot excuse or justify the homicide, because, at the time of the firing, they were out of all danger of hurt, especially the defendant, O'Shields. Human life is too precious to be taken except in necessary self-defense; but human nature is weak, and the circumstances of this case might well have appealed to the court to have inflicted a lighter penalty upon the convicted man. With that, however, this court has no right to interfere. If O'Shields fired, and his shot killed Fleming, the facts, we think, make, in law, a case of voluntary manslaughter. The policemen could have used their clubs. The proof is that they had them. They preferred to get off at a safe distance and fire. They must take the consequences of their recklessness of life in thus using deadly weapons. Whilst the law protects them in the discharge of every duty, and arms them with weapons which it is unseemly, if not unlawful, for others to carry, yet this is to preserve, not to break, the peace; to defend, not to endanger, human life; and they should be held to a rigid accountability if they use the deadly weapons entrusted to them for the public safety in a careless disregard of human life. The suddenness of the transaction, and the attack upon them, whilst, we repeat, it may palliate and mitigate, cannot justify, this homicide. The man was drunk; they had seen him a short time before and knew his condition. This should have made them more careful in conduct and less disposed to resent an insult. If, then, the evidence sustains the verdict, and the law applicable to the case sanctions it, it remains to be seen whether the court erred in admitting or rejecting evidence, or in charging or refusing to charge.

O'Shields vs. The State of Georgia.

The court rejected the sayings of Jones soon after the homicide, in two to ten minutes, that he shot and defendant did not. If part of the *res gestœ*, they were admissible. They were made, it is true, when the man shot was dead, and after search for pistols on him and his companions, yet they may be said to be *res gestœ* under the rulings of this court in similar cases. But Jones had been acquitted of the offense, was a good witness for defendant, was sworn in the case, and did swear to the same facts on the trial. Defendant was not, therefore, injured, but had the benefit of Jones' oath in place of his sayings, without oath, to the same facts. Nor do we think that the court erred in his charges or refusals to charge. He charged the substance of all the requests which were proper, and those not covered by the charge should not have been given. The law of murder, of voluntary manslaughter and of justifiable homicide was thoroughly expounded and carefully explained. The law of involuntary manslaughter was properly refused. The whole charge submitted the whole law of the case fairly and fully, as well as clearly and ably, to the jury, and we can see no ground for complaint on the part of the defendant.

We think, too, that the juror attacked was amply purged of all ground of suspicion of bias by his own affidavit and that of another who heard all he said. What he did say was in jest, and he swore that he was perfectly impartial and on good terms with the defendant.

In reference to the newly discovered testimony, we must regard it as all cumulative. Part of it is in reference to the pistol, whether it was shot off, and how many barrels were loaded, which was fully examined on the trial; and the rest, the sworn affidavit of one Miller, that he was by the side of O'Shields and that O'Shields did not shoot. Whether O'Shields shot or not was the great issue in the case, and evidence was pressed upon that point, and the court was requested to charge in writing thereon, and did charge on several occasions in the course of his charge, the substance, though not the language of the request. It must, therefore, be cumulative merely to

O'Shields *vs*. The State of Georgia.

introduce a new man upon this hotly contested issue.  Besides, it is remarkable that if he stood in four feet of O'Shields, that the latter did not see him and have him sworn on the trial.  He knew O'Shields, he swears, and we suppose the policeman knew him.  Why, then, did he not subpœna him? It is remarkable, too, that Miller did not go up to the corpse at the time the others did.  Who is Miller?  It is well, as remarked by Judge BLECKLEY in the case of *Young vs. The State*, decided this morning, that in these times some proof of the identity and respectability of witnesses whose testimony is newly discovered, and who appear only by affidavit, and are not seen in person by either court or jury, should be produced to fortify the motion on this ground.

It is needless to add that the court committed no error in providing for the wants of the jury in respect to medicines and necessaries; and that in recharging the jury at their request upon a point of law which troubled them, it is not imperative upon him to go over his whole charge again.

We have thought much over this case, and have given it that attention which its importance demanded.  The credibility of the witnesses was for the jury; the conflict was to be reconciled by them; they have weighed and considered and passed upon it; there is enough in the record to authorize their verdict; the law has been given substantially and fully to them; no error has been committed by the court which, in our judgment, injured the defendant; he has had a fair trial, and we feel constrained to let the verdict stand.

Judgment affirmed.