## SCURRY FOSTER *v.* THE STATE.

1. DECLARATIONS AS RES GESTÆ. — A declaration explanatory of an act is admissible in evidence as *res gestæ* if it was made spontaneously at the time of the act and before deliberation or time to fabricate the statement. See the opinion *in extenso* on this subject.

2. SAME — CASE STATED. — In a trial for murder there was conflicting evidence whether or not the deceased, when shot by the defendant, had a knife in his hand and was advancing with it on the defendant. The defence proposed, but was not allowed, to prove that the defendant on being arrested, within less than a minute after he shot the deceased, exclaimed, "I would shoot any man who was trying to cut my throat." *Held*, that the proposed evidence was erroneously excluded. It was part of the *res gestæ*, and was also competent as corroborative testimony that the deceased had a knife and when shot was advancing with it upon the defendant.

3. MANSLAUGHTER — "ADEQUATE CAUSE." — Among the causes instanced by the Penal Code as adequate to reduce culpable homicide from murder to manslaughter is an "assault and battery by the deceased, causing pain or bloodshed." To constitute this cause it is not necessary that both pain and bloodshed should be caused by the assault and battery; either is sufficient.

4. CHARGE OF THE COURT. — An instruction which has no application to any evidence adduced in the case is calculated to confuse the issues properly before the jury.

5. PERMISSIBLE HOMICIDE. — In a trial for murder the court below in substance instructed the jury that the defendant was justifiable in killing the deceased if he killed him to prevent him from murdering the defendant's brother; but that the killing was not justifiable if the deceased had been attacked by the defendant's brother, or if they were engaged in a mutual conflict. And further, that if the defendant's brother was the aggressor, and the defendant interposed in his behalf, the latter was not justified in taking life although at the moment of doing so he was himself in such danger as to create in his mind a reasonable expectation or fear of death or serious bodily harm. *Held*, that these instructions were erroneous to the extent that they made the defendant's amenability dependent upon and commensurate with that of his brother, instead of conditioning it, as the law does, upon the knowledge and intent of the defendant himself. *Guffee v. The State, ante*, p. 187, cited with approval.

6. PRIVILEGE OF COUNSEL. — The reading of law to the jury is a matter controllable by the discretion of the trial court, and its action thereon will not be revised on appeal, except in a clear case of abuse.

7. PRACTICE — SPECIAL VENIRE. — The court has no power to excuse jurors summoned on a special *venire* until they have appeared at the time and place designated in the *venire facias*.

APPEAL from the District Court of Austin. Tried below before the Hon. L. W. MOORE.

The indictment charged the appellant with the murder of Nicholas Umland, October 13, 1878, by shooting him with

a gun.  He was found guilty of murder in the second degree, and his punishment was assessed at five years' confinement in the penitentiary.

The affray which resulted in the killing of Umland by the appellant took place at a German school-house in Austin County, about two or three o'clock in the morning of the day alleged in the indictment.  Bail was allowed the appellant by this court on his appeal from a refusal of it by the court below, and in the report of the case upon that appeal (5 Texas Ct. App. 625) a statement of the facts appears. The opinion now reported sufficiently indicates such other matters of fact as have any significance.  With reference to the matter set forth in the last head-note, — the discharge of a juror belonging to a special *venire*, — it appears to have been the result of misapprehension.

*Chesley & Haggerty, J. P. Bell*, and *A. J. Harvey*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

White, P. J.   There was a conflict in the evidence as to whether deceased, at the time he was shot, was in fact armed with a knife which he held open in his hand.   John B. Lewis, a deputy-sheriff, who arrested the defendant, testified, in part:  " When the pistol fired I saw the flash; saw the man whom the flash came from, and immediately caught hold of him, — not a quarter of a minute after." Defendant's counsel then proposed to prove by this witness that just at the moment he placed his hand on defendant the latter remarked, " I would shoot any man who tries to cut my throat;" which was objected to by the prosecuting attorney, and the objection sustained by the court, and the evidence excluded, as shown by the first bill of exceptions.

The exclusion of this evidence was error.  By all the approved authorities, coming as it did spontaneously, at the

very time of the act and before time for deliberation or time to manufacture the story, the defendant's declarations were *res gestæ.* *Boothe* v. *The State,* 4 Texas Ct. App. 202.

In *Little* v. *The Commonwealth,* 25 Gratt. 921, it was held, on the trial of a prisoner for murder, that a statement made by him to a person in a few minutes after the homicide was committed, and near to the place, and in presence and hearing of eye-witnesses to the homicide, should be admitted as evidence at the instance of the prisoner, as part of the *res gestæ.* The court say : " What was so said might well have been in whole or in part admissible evidence either for or against the prisoner. It was very closely connected both in time and place with the homicide which was the subject of the prosecution, and might well have tended to elucidate that fact, as part of the *res gestæ.*"

And so, in *O'Shields* v. *The State,* 55 Ga. 696, it was held that " *res gestæ* embrace the sayings of the parties within two or five minutes of the transaction which resulted in the homicide, and before preparation for defence could probably have been in the mind of the party speaking."

" The *res gestæ* of a transaction is what is done during the progress of it, or so nearly upon the actual occurrence as fairly to be treated as contemporaneous with it. No precise period of time can be fixed *à priori* where the *res gestæ* ends. Each case turns on its own circumstances. Indeed, the inquiry is rather into events than into the precise time which has elapsed. Is the proof offered of a matter fairly a part of the same transaction ? Is it an event happening naturally and spontaneously as a part of the occurrence under investigation ? If so, the law permits it to be proven as part of it ; since the whole scene as it transpired ought to appear to the tribunal called upon to determine its character. Matters occurring before or after — that is, before the transaction began, or after it is ended — are not a part of it. To make them such, they must be so nearly

connected with the actual occurrence as to be without sus-
picion of afterthought or forethought." *Hall* v. *The State*,
48 Ga. 607 ; *The State* v. *Thomas*, 30 La. An. 600.

Besides being *res gestæ*, the excluded testimony was
material and important both as tending to show why the
defendant shot the deceased and as corroborative of the
other witnesses for defendant who testified that Umland had
a knife in his hand, and was advancing with it upon defend-
ant, at the time the fatal shot was fired.

A number of objections are urged to the charge of the
court, several of which, in our opinion, are well taken.
For instance, on manslaughter the jury were told that " an
assault and battery by the deceased, causing pain *and* blood-
shed, * * * would reduce the homicide to manslaugh-
ter." It is not necessary, under the statute, that " pain *and*
bloodshed " combined should have been inflicted ; the ex-
pression used in the statute is " pain *or* bloodshed ; " that
is, if either the one or the other alone has been caused by
the assault and battery, it would be sufficient. Pasc. Dig.,
art. 2254 ; *Tickle* v. *The State*, 6 Texas Ct. App. 123. The
other portion of this paragraph of the charge, which is a
copy of the second subdivision of art. 2254, is also ob-
noxious to the objection urged, that there is no concatena-
tion of facts in evidence calling for such a charge, and it
was therefore only calculated to confuse the real issues
before the jury.

Again, the jury were told, " If the jury believe from the
evidence that the defendant did kill Nicholas Umland to
prevent the deceased from murdering some other person,
the defendant would be justified. It must reasonably ap-
pear, however, by the acts, or by words coupled with acts,
of the person killed, that it was the purpose and intent of
such person to commit the murder of such third person."
So far, the instruction was in conformity to the law. Pasc.
Dig., arts. 2225, 2226. " But," the charge proceeds, " if
the person slain was attacked by, or engaged in a mutual

combat with, such third person, then the defendant would not be justified in taking the life of the deceased.'' This states the proposition too broadly, and would not be the law in the event the defendant did not know the facts and circumstances of the attack, or the causes resulting in the mutual combat, to an extent that such knowledge would deprive him of justification. If he had known that his brother had unlawfully attacked Umland, then the law would impute to him the same responsibility which would have been attached to his brother had the latter committed the homicide. But if he did not know the unlawful act and design of his brother, but came up, and, finding his brother engaged in a conflict with Umland, and that Umland was in the act of murdering his brother with a knife, he shot Umland to save his brother's life, then he would, at most, be guilty of no more than manslaughter, in law, no matter what would have been the result to his brother had his brother done the killing himself; and under such a state of facts it would have made no difference whether the combat was a mutual one, or one brought on by the brother or the deceased. See *Guffee* v. *The State*, decided at the present term, *ante*, p. 187.

The same objection lies to the following portion of the charge: '' If a party brings on a difficulty and is the aggressor, or interposes for the defence of any other person who is such aggressor, he is not justified in taking life, though at the moment of the homicide he is himself in such danger as to create in his mind a reasonable expectation or fear of death or some serious bodily harm.'' Whether he would or not depends likewise upon his knowledge of the antecedent facts. These paragraphs of the charge are erroneous in that they do not make the guilt of defendant to rest where the law places it, upon his guilty knowledge and guilty intent. *Guffee* v. *The State, supra*.

An exception was reserved to the court's permitting the prosecuting attorney to read from certain decisions during

his argument to the jury. As has been repeatedly decided heretofore, the reading of law to the jury is a matter within the sound discretion of the court below, and will not be considered on appeal except in clear cases of abuse. *Dempsey* v. *The State*, 3 Texas Ct. App. 429 ; *Hines* v. *The State*, 3 Texas Ct. App. 483 ; *Hudson* v. *The State*, 6 Texas Ct. App. 565.

With regard to the remaining bill of exceptions, it is only necessary to refer to the opinion of this court in *Robles* v. *The State*, 5 Texas Ct. App. 346, where it was held that the court has no power to excuse jurors summoned on a special *venire* until they have appeared at the time and place designated in the *venire facias*.

On account of the errors above pointed out, the judgment of the court below is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*