### Peter Bressler

*v.*

### The People of the State of Illinois.

*Filed at. Ottawa November 14, 1885—Re-filed August 13, 1886.*

1. Adjournment of court, *from day to day, by the sheriff, in the absence of a judge—as affecting the jurisdiction to hold the residue of the term—posting notices.* A circuit court was opened on the first day of the term, in due form, by one of the judges, and an order was made and entered of record that if at five o'clock in the evening of that day no judge of the court should be in attendance, the sheriff should adjourn the court until the next day at nine o'clock A. M., which he did, and there being no judge present at that time, the sheriff again adjourned the court, by proclamation, to the same hour of the third day, and posted a notice on the court house door of such last adjournment, and on the third day a judge was present and opened court. It was *held,* that the court was properly adjourned from day to day, and had jurisdiction to try a party accused of crime, and that the statute did not require the posting of notice of the first adjournment, as it was by order of the court.

2. Witness—*competency—of grand juror to testify to evidence before grand jury*. On the trial of a party for larceny, after laying the proper foundation, a grand juror was called to contradict one of defendant's witnesses, by testifying to his statements on oath before the grand jury, which he had denied. It was objected that a grand juror could not be called as a witness to disclose what occurred before the grand jury, but the court held the evidence proper.

3. Same—*credibility—defendant in criminal case testifying in his own behalf*. Where a defendant in a criminal case testifies, and the jury know he is a party, no further showing need be, made that he is a party, and the jury are authorized to consider to what extent that circumstance should affect his credibility. They are neither bound to believe nor to disbelieve him, but in weighing his evidence they are to take into consideration the fact that it is evidence given by the defendant in the case, and an instruction to that effect is not inconsistent with one that the jury have no right to disregard the defendant's testimony through mere caprice, or merely because he is defendant, and that the law makes him a competent witness, and the jury are bound to consider his evidence, and give it such weight as they believe it entitled to, and that they are the sole judges of his credibility.

4. Same—*impeachment—by proof of contradictory statements of the witness*. Where a witness, when asked as to the making of other statements inconsistent or at variance with his testimony, neither directly admits nor denies the act or declaration, but states he does not know or recollect, or gives any other indirect answer not amounting to an admission, it is competent to prove the affirmative, by way of impeachment.

5. Where a witness testifies that on a certain day he let his father, the defendant, have $300 for a certain purpose, it is proper, on cross-examination, to ask him when and of whom he got the money, as one means of contradicting him and discrediting his testimony.

6. Same—*right of witness sought to be impeached, to explain*. A witness called by the defendant, after testifying as to a transaction, was asked if he did not testify so and so before the grand jury, naming his testimony there, to which he replied, "No, sir; but I can tell you what I did say, if you want me to." Defendant's counsel then said, "I insist that he can explain," when the court said, "If it was that in substance, he can state," and the witness answered it was not that in substance, and defendant's counsel excepted: *Held*, that the ruling was unobjectionable. If an explanation was desired, it should have been asked for on reëxamination, when he might have stated what he did testify to before the grand jury.

7. Evidence—*credence to be given to testimony—tests to be applied*. On the trial of one for larceny, the court instructed the jury that in judging of the weight and importance to be given to the testimony of any witness or witnesses in the case, they should take into account their means of knowledge of the facts of which they speak, and that the jury had the right to judge,

from their own common observation, of the ability of persons to judge of given facts from given opportunities, and that they were not obliged to accept as true the testimony of any witness or witnesses, if, judging from such common observation, they are or may be mistaken concerning the facts of which they speak: *Held*, that the instruction contained all that was necessary to caution the jury in respect to the liability of witnesses to be deceived in seeing or hearing.

8. SAME—*directing the jury to disregard certain testimony*. An instruction telling the jury that in certain contingencies they should disregard certain evidence, is not proper. The word "may" ought to be used in place of "should."

9. CRIMINAL LAW—*witnesses indorsed on indictment—whether all must be called to testify—of some of them being called by the defendant*. Under our practice the prosecution is not compelled to introduce all the witnesses whose names are on the back of the indictment. If the People fail to do so, and the defendant introduces a witness whose name is thus indorsed, he becomes his witness the same as any other.

10. SAME—*reasonable doubt—as to particulars in chain of evidence*. On the trial of one for larceny, the court, on behalf of the People, instructed the jury that the rule requiring them to be satisfied of the defendant's guilt beyond a reasonable doubt, to warrant a conviction, did not require them to be satisfied, beyond a reasonable doubt, of each link in the chain of circumstances relied upon to establish the defendant's guilt, but that it was sufficient, if, taking the testimony all together, the jury are satisfied, beyond a reasonable doubt, that the defendant is guilty: *Held*, that the instruction was not erroneous.

11. Each material fact essential to constitute the defendant's guilt, must be proved beyond a reasonable doubt. But these facts may be proved by evidence of circumstances, some of much and others of little weight, resting on the testimony of various witnesses of different degrees of credibility and intelligence; and so in the chain relied upon, there may be links, when separately considered, about which there are reasonable doubts, but when the entire evidence is considered, each link strengthens every other link, and thus there may be a complete chain of evidence, satisfying, beyond a reasonable doubt, of the guilt of the defendant.

12. It is the effect of evidence as a whole, and not of distinct parts of it, isolated from its connection with the other evidence, by which the jury are to be governed in determining the question of guilt or innocence.

13. SAME—*calling on prisoner to know if he has anything to say why sentence should not pass*. The record of a trial and conviction of one for larceny showed the making and overruling of motions for a new trial and in arrest of judgment, after arguments of counsel, but failed to show that the defendant was asked by the clerk or court if he had anything to say why sentence should not be pronounced, before the court gave judgment: *Held*, that

under the modern practice, however it might be in a capital case, the reason of the rule contended for, that such question should be asked, does not apply to minor felonies.

14. Instruction—*not based on evidence*. There is no error in refusing an instruction as to facts not shown by the evidence, nor one substantially given in another instruction. So in the absence of proof of any admissions of guilt by a defendant, on his trial for larceny, an instruction to the effect that statements of a witness as to the verbal admissions of a party should be received with great caution, was held properly refused.

15. Practice—*objection to evidence not made on the trial*. If a party desires to assign error in the admission of evidence, he should make objection, or take the necessary steps in the trial court to have a ruling of the court on the question. If a witness called to impeach another does not show a sufficient acquaintance with the general character of the witness sought to be impeached, the party complaining should object at the time to the testimony, or move to exclude the same, and if the court should rule adversely to him, take his exceptions.

Writ of Error to the Circuit Court of Lee county; the Hon. William Brown, Judge, presiding.

·Messrs. W. & W. D. Barge, for the plaintiff in error:

An impeaching witness must know the general reputation of the witness attacked, for truth and veracity among his neighbors and associates, and, ordinarily, he should come from the neighborhood of the person whose character is questioned. 1 Greenleaf on Evidence, sec. 461.

Frank Bressler's name being on the indictment as a witness for the People, they could not impeach him. Roscoe says that it is the duty of the prosecution to put the witnesses it has not called, into the box, for the defendant to cross-examine. Roscoe on Crim. Ev. (4th Am. ed.) 163; *Rex* v. *Beezley*, 4 C. & P. 19 Eng. C. L. 220; *Rex* v. *Bodle*, 25 Eng. C. L. 186.

A grand juror will not be permitted to testify how a witness swore, except in a prosecution for perjury. Proffatt on Jury Trials, sec. 49; *Trindle* v. *Nishall*, 20 Mo. 326; *Beam* v. *Link*, 27 id. 261; *State* v. *Fassett*, 16 Conn. 466.

The testimony of the People's impeaching witness was not admissible. 1 Greenleaf on Evidence, sec. 461.

It was error for the People not to produce Frank Bressler as a witness, that the defence might cross-examine him. Wharton on Crim. Ev. sec. 448.

An instruction is wrong which does not confine the jury to the evidence, and limit their belief to the testimony. *Parker* v. *Fisher*, 39 Ill. 164.

As to instructions in regard to the weight and credibility of a defendant's testimony in a criminal case, see *Bulliner* v. *People*, 95 Ill. 407; *Chambers* v. *People*, 105 id. 414; *Bartholomew* v. *People*, 104 id. 601.

The jury can not disregard the testimony of a witness as unworthy of belief, except on some evidence of unworthiness and turpitude. *Mixsell* v. *Williamson*, 35 Ill. 533; *Blanchard* v. *Pratt*, 37 id. 243; *Chittenden* v. *Evans*, 41 id. 253; *Crabtree* v. *Hagenbaugh*, 25 id. 240; *Robertson* v. *Dodge*, 28 id. 161; *Railroad Co.* v. *Gretzner*, 46 id. 375; *Railroad Co.* v. *Stumps*, 55 id. 375; *Life Ins. Co.* v. *Gray*, 80 id. 28.

The People's fifth instruction, to the effect that it was not necessary the jury should be satisfied, beyond a reasonable doubt, of each link in the chain of circumstances relied on to establish defendant's guilt, was erroneous.

In all cases of felony, before passing sentence the court should ask defendant if he has anything to say against passing judgment, and this should appear from the record. *Rex* v. *Geary*, 2 Salk. 630; *King* v. *Spike*, 3 id. 358; *Safford* v. *People*, 1 Parker's Crim. R. 474; *Buncomb's case*, 3 Mod. 263; *Messenger* v. *People*, 45 N. Y. 1; 1 Bishop on Crim. Proc. sec. 1118; 1 Chitty on Crim. Law, 700, 720; 4 Blackstone's Com. 375; Barbour on Crim. Law, 330.

The court had no jurisdiction. There was no judge present when the sheriff adjourned court on Monday evening, and he posted no notice of such adjournment. Rev. Stat. 1881, p. 336; secs. 52, 53, 55.

Mr. GEORGE HUNT, Attorney General, Mr. WALTER STAGER, State's attorney for Whiteside county, and Mr. CHARLES B. MORRISON, State's attorney for Lee county, for the People :

If a witness neither admits nor denies the act or declaration, it is competent for the adverse party to prove the affirmative. *Ray* v. *Bell*, 24 Ill. 451 ; *Wood* v. *Shaw*, 48 id. 276.

Want of means may be shown, to prove there was no payment, as claimed. *Atwood* v. *Scott*, 99 Mass. 177 ; *Stebbins* v. *Miller*, 12 Allen, 590 ; *Winchester* v. *Charter*, 97 Mass. 140.

When a witness testifies to his having made a payment of money, it is competent, on cross-examination, to inquire into the sources from whence he received it. *Pontius* v. *People*, 82 N. Y. 329 ; *State* v. *Cameron*, 40 Vt. 555.

It is now settled that the oath of a grand juror is no impediment to his testifying to the evidence before him, when it becomes material to justice.[§] *State* v. *Broughton* 7 Ired. 96 ; *State* v. *Wood*, 53 N. H. 484 ; *Burnham* v. *Hatfield*, 5 Blackf. 21 ; *Little* v. *Commonwealth*, 25 Gratt. 921 ; *United States* v. *Charles*, 2 Cranch C. C. 76 ; *Commonwealth* v. *Hill*, 11 Cush. 137 ; *People* v. *Young*, 31 Cal. 563 ; *Purdick* v. *Hunt*, 43 Ind. 381 ; *Commonwealth* v. *Mead*, 12 Gray, 167.

Neighborhood is coëxtensive with intercourse. It is not necessary that the character testified to should be proved to be that of the place where the person whose character is in issue, resides. *Chess* v. *Chess*, 1 Pa. 32 ; *Boswell* v. *Blackman*, 12 Ga. 591 ; *Crabtree* v. *Hagenbaugh*, 25 Ill. 217 ; *Woodman* v. Churchill, 51 Me. 112.

When a witness resided in a place long enough to establish a character there, what his character is in that place, at the time of the trial, may be shown, although living elsewhere. *Keeley* v. *State*, 61 Ala. 19 ; *Holmes* v. *Sateler*, 17 Ill. 543 ; *Blackburn* v. *Mann*, 85 id. 227 ; *Steeper* v. *Van Middlesworth*, 4 Denio, 431.

Counsel for the prosecution is not bound to call every witness whose name is on the indictment. If such is not done,

and the prisoner calls the witness, he becomes his witness, and the prosecution may impeach him. 3 Russell on Crimes, (9th Am. ed.) 528; *Regina* v. *Cassidy*, 1 F. & F. 79; *Regina* v. *Edwards*, 3 Cox's C. C. 83; *Regina* v. *Woodhead*, 2 C. & K. 520. See, also, *Lamb* v. *People*, 96 Ill. 91; *State* v. *Cain*, 20 W. Va. 679; *People* v. *Quick*, 51 Mich. 547.

This court has repeatedly held that the jury are not bound to believe the defendant in a criminal case. *Chambers* v. *People*, 105 Ill. 415; *Bulliner* v. *People*, 95 id. 407.

It is not necessary to tell the jury in every instruction what they must believe from the evidence. *Bulliner* v. *People*, 95 id. 407; *Kennedy* v. *People*, 44 id. 285; *Hanrahan* v. *People*, 91 id. 146; *Peri* v. *People*, 65 id. 19.

It was bad in stating that the jury should disregard the evidence of witnesses impeached. *Reynolds* v. *Greenbaum*, 80 Ill. 417; *Otmer* v. *People*, 70 id. 149.

The ceremony of calling upon the accused to know if he has anything to say before sentence, is not necessary, except in capital cases. Wharton on Crim. Pl. and Pr. sec. 906; *People* v. *McGeery*, 6 Parker's Crim. R. 653; *Jones* v. *State*, 51 Miss. 718; *State* v. *Hoyt*, 47 Conn. 518; *Spigner* v. *State*, 58 Ala. 451.

In the absence of any statement in the record to the contrary, it will be presumed that this formality has been complied with. *People* v. *McGeery*, 6 Parker's Crim. R. 653; *Bond* v. *State of Ohio*, 23 Ohio St. 349; *Territory* v. *Webb*, 1 New Mex. 147; *Johnson* v. *State*, 14 Texas App. 306.

The presumption is that the court performed its duty. *McKinney* v. *People*, 2 Gilm. 540; *Pate* v. *People*, 3 id. 644; *Martin* v. *Barnhardt*, 39 Ill. 12; *Morton* v. *People*, 47 id. 468; *Knouff* v. *People*, 6 Bradw. 154.

In any event, the omission of this ceremony is no ground for a new trial, but only for setting aside the judgment already pronounced, and remanding the prisoner for re-sentence. *McCue* v. *Commonwealth*, 78 Pa. St. 185; *Dodge* v.

*People,* 4 Neb. 220; *Kinsler* v. *Wyoming Territory,* 1 Wy. Ter. 112; *Reynolds* v. *State,* 68 Ala. 502; *Benedict* v. *State,* 12 Miss. 313; *Keech* v. *State,* 15 Fla. 591; *State* v. *Hoyt,* 47 Conn. 518.

A reasonable construction of the statute is, that when the court has been duly opened, the sheriff may adjourn, from day to day, without posting notices, but when, on a written order from the judge, he adjourns court for a longer time, he must post the notices. The case of *Wight* v. *Wallbaum,* 39 Ill. 554, though decided in 1864, was based on the law in force in 1844. See Rev. Stat. 1833, p. 151, sec. 16.

Mr. Justice Scholfield delivered the opinion of the Court:

Peter Bressler was indicted by a grand jury of Whiteside county for the crime of larceny. The venue was changed to the circuit court of Lee county, where he was tried and convicted, and sentenced to the penitentiary for the term of one year. He sues out this writ of error, and brings the record of his trial and conviction before us for review.

Before proceeding to the questions arising on the rulings during the progress of the trial, we must pass upon the question, arising *in limine,* whether the court had jurisdiction to try the case, for without that jurisdiction the judgment is a nullity.

The statute provided that the term should commence on Monday, the 9th day of February, A. D. 1885. At two o'clock in the afternoon of that day, court was opened by one of the circuit judges, in due form of law. An order of court was then made, and entered of record, to the effect that if, at five o'clock in the evening of that day, no judge of the court should be in attendance, the sheriff should continue the court until the next morning at nine o'clock. At the time to which that adjournment was made, no judge of the court being in attendance, the sheriff made proclamation, in pursuance of the order, that the court was adjourned until the next morning at nine o'clock. At the last named hour there was yet

no judge of the court present, and at five o'clock in the evening of the same day, (the second day of the term,) the judge of the court still being absent, the sheriff made proclamation that the court was adjourned until nine o'clock the next morning, (the third day of the term,) and posted notices, on the door of the court house, of such adjournment. At the last named hour the judge of the court was present, and court was opened in due form. Bressler then filed a plea, setting up these facts, to the jurisdiction of the court. A demurrer to the plea was filed on behalf of the People, which the court sustained, and adjudged that Bressler should answer over, to which ruling he, at the time, excepted. Very clearly, the demurrer to the plea was properly sustained. It is provided by section 20, chapter 37, of the Revised Statutes of 1874, that "if, at any time after the opening of court for the term, no judge of the court is present at the time and place of holding court, the sheriff of the county or his deputy may adjourn the court from day to day, or, upon the written order of the judge, from time to time, and shall give notice of such adjournment by making proclamation in the court house, and by notification posted on the door of the court house." The adjournment on the first day was, strictly, by order of the court, and no notice of that adjournment was therefore required to be posted; and it is not claimed that the adjournment on the second day was not in conformity with the statute, assuming the first adjournment to have been regular.

The larceny charged, was of two promissory notes, given by the defendant to one Henry Smith. They were both dated December 31, 1883. One was payable October 1, 1884, for $975.76, with interest from date at eight per cent per annum, and the other was payable on the 1st of November, 1884, for $1603.92, with interest, also, at eight per cent per annum. A payment of $905 had been made and credited on the last mentioned note, and the sum of $110 had been paid and

credited on the other note.    Both notes were secured by
chattel mortgage.    The notes were in the possession of Adam
Smith, who was a brother of the payee, and a justice of the
peace.    It is agreed, on all hands, that on Monday, the 29th
of September, 1884, the defendant was in the office of Adam
Smith, in Sterling, and then paid, on the first named note, a
check drawn by Frank Bressler on Galt & Tracy's bank, for
$625, the cash upon which was soon after paid by the bank
to Adam Smith, and that, at that time, the possession of both
of the notes passed, by some means, from Adam Smith to
the defendant.    The evidence also agrees in proving that be-
fore the check was paid over, a computation was made of the
interest due upon the note, and it was found that $300, added
to the amount of the check, would overpay that amount by
sixty-eight cents; that after the check was delivered, Smith,
not having the sixty-eight cents, handed back to the defend-
ant a dollar, and the defendant then handed Smith thirty-
one cents in change, which Smith accepted in lieu of the
thirty-two cents which was necessary to make the accurate
change.

Smith testified that the defendant was in his office, in the
morning, several times, before the interest was computed and
the check paid over, inquiring at each time whether one Sox,
to whom he claimed to have sold four colts on the day before
for $300, had called, saying at one time, perhaps the first,
that Sox had agreed to meet him there that morning and pay
that sum on the note; that finally, a short time before noon,
the defendant concluded to have the computation made and
pay over the check, as was done, saying that Sox could pay
the $300 when he came, which he expected might be at any
moment; that just as they had got through changing the
money, and while they were yet standing at the office table,
(these notes, with a number of other notes, all of which were
pasted together at the corner with mucilage, still being on the
table,) August Schwertferger entered the room; that witness

then turned from the table and advanced two or three steps to meet Schwertferger, and they spoke to each other; that just at that time the defendant passed around Schwertferger and left the room; that the witness, after talking to Schwertferger, turned to his table, took the notes that were still lying there and put them in a safe, and locked it; that he then went to the bank and drew the money upon the check, and afterwards went to his dinner; that upon returning to his office he brought the packages of notes out of the safe, with the intention of indorsing the payment upon the note, and he then found that the notes were missing; that he immediately employed a constable to go with him to the residence of the defendant, about three and a half miles from Sterling, where, finding the defendant, he demanded of him a return of the notes, speaking loud enough for the defendant to hear him, twice, but the defendant made no answer to him, and, with his son Frank, drove rapidly away in a buggy. On the next day but one, the larger of the two notes was returned to the witness by a person to whom the defendant had delivered it for that purpose.

Schwertferger testified that as he entered the room, at the time mentioned by Smith, he heard the jingling of money, and he observed the defendant standing at the table, doing something with the papers there, and that he (defendant) then took something and went out, passing by the witness; that he put in his pocket what he took.

Sox testified that about two weeks before the 29th of September, the defendant wanted the witness to look at some horses and cattle he desired the witness to buy. He informed witness that they were mortgaged, but said that he preferred to sell them at private sale. Witness went and examined the property, but did not then make any purchase. On the Friday next before the 29th of September, the defendant again called upon the witness for the same purpose, and he then told witness that he wanted to sell to make up $300 to pay to Smith;

that on the Sunday next before the 29th, witness bought four colts from the defendant for $300, which he agreed to pay to Smith between that time,—*i. e.*, the 28th of September and the 1st of October; that the witness met the defendant in Sterling, on Monday, the 29th of September, on the street, just opposite to Smith's office; that the defendant asked witness if he had been at Smith's, and upon being answered in the negative, but that the witness was just going there, he informed the witness that, if agreeable to witness, he (defendant) would like to keep the colts, as he had "fixed it with Smith."

The defendant testified in his own behalf. He testified that he made an arrangement with his son, Frank, whereby he got $300 from him for the four colts; that he gave the check and the $300 to Smith, received the one dollar, gave back the thirty-one cents in change, and that Smith then handed him, as he thought, the note for $975.76, tearing it off the others. He denied that Schwertferger was in the room while he was there, and said he met Schwertferger coming in just as he (defendant) passed out of the room. He denied that he told Smith that Sox was to pay him $300; said that he asked if Sox had been in that day, and that, some two weeks before, he spoke to Smith, to know if it would be all right if he sold Sox some horses. Defendant further testified that shortly after getting what he supposed to be the note that he had paid, he delivered it to his son, Frank; that Frank, the next day, showed him that he had obtained both notes, instead of one, and that he then took the $1603.92 note to Smith's office to return it to him, but Smith was absent, and he then gave it to the party who returned it to Smith. Frank Bressler corroborated the defendant in respect to the $300 said to have been paid by him for the colts, and Mrs. Rica Stultz, the defendant's housekeeper, corroborated both as to the payment of the $300, which she says Frank paid to the defendant in her presence. The defendant denied that he heard Smith demand a return

of the notes on the afternoon of the 29th of September, and Frank also denied that he heard such demand. The constable who accompanied Smith corroborated him, and said that he heard him make the demand, and one of the grand jurymen returning the indictment in this case, testified that Frank Bressler was sworn and examined before the grand jury while the question of returning this indictment was under consideration, and then testified that he "did not hear Smith ask about notes but once, and that he asked his father what Smith said about notes, and that his father replied that he did not know,—that he had paid one note, and did not know what Smith meant about notes."

Witnesses were introduced both impeaching and sustaining the defendant's reputation for truth and veracity, and witnesses were also introduced and examined, whose evidence tended to contradict the evidence of Frank Bressler, by showing that he could not have had the money he claimed to have had, and which was necessary to make the payments to the defendant that he testified he did make.

Such of the numerous questions raised upon the rulings during the progress of the trial as we deem material, will now be considered.

*First*—The court permitted the People to prove, by the witnesses Moses Dillon and William Palmer, over the defendant's objection, the amounts of money they had paid the witness Frank Bressler. As we understand the record, Frank Bressler did not fully and satisfactorily answer the question as to the dates and amounts of money paid to him by Dillon and Palmer. He answered, at different times, "I would not be surprised," "I do not know," "Don't recollect," etc. In *Ray* v. *Bell*, 24 Ill. 451, this court said, in answer to a like objection to that urged here: "The rule on this point, as laid down by the elementary writers, and as found in reported cases, is, if the witness neither directly admits nor denies the act or declaration, as, when he merely says that he does not

recollect, or gives any other indirect answer not amounting to an admission, it is competent to the adversary to prove the affirmative." To the same effect is also *Wood et al.* v. *Shaw*, 48 id. 273. We think the evidence was properly admitted.

*Second*—The People, on cross-examination, were allowed to interrogate Frank Bressler as to when and how he got the money which he testified that he let the defendant have. This was proper, as one means of contradicting him and discrediting his testimony. If he did not have the money, it is evident that he could not have let the defendant have it.

*Third*—Frank Bressler was interrogated whether he did not testify before the grand jury, while the question of presenting this indictment was under consideration by that body, that "father came and got into my buggy, and I asked father what Smith said about notes, and he said he did not know,— he had paid one note, and did not know what Smith meant about those notes. I did not hear Smith ask about notes but once." This has reference, as appears from other parts of the testimony, to the time when Smith testified that he twice demanded the defendant to return the notes, on the afternoon of the 29th of September, an hour or so only after they were taken or obtained by him. To the interrogatory the witness answered: "No sir; but I can tell you what I did say, if you want me to." Defendant's counsel then said, "I insist that he can explain." The court said, "If it was that in substance, he can tell." The witness answered it was not that in substance, and defendant's counsel thereupon excepted to the ruling. The ruling of the court was unobjectionable. This was cross-examination, and the witness should have been required to answer the questions that were asked, which, in this case; if he told the truth, could have been done by the word "no." On the re-direct examination he would have been allowed to repeat what he did testify to before the grand jury, if he desired to do so. But he seems to have been content to let it rest as it was. The abstract fails to show that the wit-

ness was asked, on re-direct examination, what he did testify to before the grand jury. Inasmuch, however, as he previously testified that what he did testify to was different in substance, there was a direct issue on that point.

One of the grand jurors before whom Frank Bressler was examined and gave testimony, at the time alluded to in the interrogatory quoted, testified, directly contradicting him, and saying that he did testify in the precise language of the interrogatory. This was objected to, and the ground of objection now insisted upon is, that a grand juror will not be permitted to testify how a witness swore, except in a prosecution for perjury. This doctrine at one time was, and in some courts it is, doubtless, still, the accepted common law rule; but we think the rule otherwise is best sustained by authorities, on principle, and is more consistent with our practice. Our statute provides (sec. 412, Crim. Code, Rev. Stat. 1874, p. 408,) that "no grand juror, or officer of the court, or other person, shall disclose that an indictment for felony is found, or about to be found, against any person not in custody or under recognizance, except by issuing process for his arrest, until he is arrested; nor shall any grand juror state how any member of the jury voted, or what opinion he expressed on any question before them."

The reasons why, at common law, the proceedings before grand juries were required to be secret, are said in the books to be, first, that the utmost freedom of disclosure of alleged crimes and offences by prosecutors be secured; second, that perjury and subornation of perjury may be prevented, by withholding the knowledge of facts testified to before the grand jury, which, if known, it would be for the interest of the accused, or their confederates, to attempt to disprove by procuring false testimony; third, to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it before the presentment is made. (*Commonwealth* v. *Mead*, 12 Gray,

167; *State* v. *Broughton,* 7 Íred. 96.)   When the indictment is returned, and the defendant arrested and placed upon trial, neither the statutory nor common law reasons for secrecy can apply.   There can be no reason, then, why evidence given before a grand jury should not be made known and proved, if the ends of justice require it.   A contrary course would tend to defeat instead of to promote justice, and be directly in opposition to the tendency of the age, which is to enlarge, rather than to contract, the sources of evidence.   See *Commonwealth* v. *Mead, State* v. *Broughton, supra,* and *Gordon* v. *Commonwealth,* 92 Pa. St. 216; *Little* v. *Commonwealth,* 25 Gratt. 921; *State* v. *Wood,* 53 N. H. 484.

*Fourth*—The name of Frank Bressler was indorsed on the indictment as one of the witnesses for the People, but he was not called and examined in chief by the People.   The defendant moved the court to order him to be called on behalf of the People, so that he could be cross-examined by the defendant, but the court declined to make the order.   The defendant then called and examined him as a witness in his behalf, and he was cross-examined by the State's attorney. It is contended the court erred in not compelling the People to introduce the witness, in order that the defendant might cross-examine him.   Under our practice, the People are not compelled to introduce all the witnesses whose names are on the back of the indictment.   If they fail to do so, and the defendant introduces a. witness whose name is thus indorsed, he becomes his witness.   And this is the modern English rule. 3 Russell on Crimes, (9th Am. ed.) 528; 1 Archbold's Crim. Prac. and Plead. (6th ed. Waterman's notes) 168–3; *Regina* v. *Edwards,* 3 Cox's C. C. 83; *Regina* v. *Cassidy,* 1 F. & F. 79; *Regina* v. *Woodhead,* 2 C. & K. 520.

*Fifth*—The fifth instruction given at the instance of the People was as follows:

"The jury are instructed that the rule requiring the jury to be satisfied of a defendant's guilt beyond a reasonable doubt,

in order to warrant a conviction, does not require that the jury should be satisfied, beyond a reasonable doubt, of each link in the chain of circumstances relied upon to establish the defendant's guilt. It is sufficient, if, taking the testimony all together, the jury are satisfied, beyond a reasonable doubt, that the defendant is guilty."

It is insisted that this is erroneous, because it is "essential that the circumstances be proved beyond a reasonable doubt, and it is just as essential that the connecting facts be established beyond a reasonable doubt." It has often been said by this court, and its correctness is obvious, although it might never have been said, that whether, in a given case, there should be a reversal for error in giving an instruction, depends quite as much upon the evidence before the jury to which the instruction might be applied, as upon the abstract accuracy of the language of the instruction; and so, if it is apparent that the language of the instruction, though inaccurate, yet, when applied to the evidence before the jury, it could not have misled the jury to believe that their duty was different from what it actually was, the inaccuracy can afford no reason for reversal.

It is quite true, as contended by counsel for the defendant, that a chain can not be stronger than its weakest link, and hence, where the fact of guilt depends upon proof of a series of links constituting a chain, the absence of a single link will be as fatal to a conviction as the absence of all the links. But the simile of a chain and links can only be applicable where there is a series of facts, one succeeding another, and each connected with and dependent upon the other. The evidence here is not of that character. The proof is direct that the defendant obtained the note from Smith. He admits it, and there has never been any controversy in regard to it. The question is, how did he obtain it? We have seen the defendant testified that he paid the note, and that Smith then voluntarily delivered it to him. Smith, in his testimony, denied

that the defendant paid the note, and that he voluntarily delivered it to him.    He said the defendant obtained the note without his consent, and without his knowledge.    One of these witnesses is not mistaken, simply.    Smith and the defendant both know what the facts are.    They both testify directly, fully, explicitly and positively.    The testimony of neither comes under the head of circumstantial evidence.    One testified truly, and the other falsely, and circumstances were then introduced in evidence, on the one side, to sustain, by rendering probable, on the other side, to discredit, by rendering improbable, the testimony given by the defendant. And this was all the evidence there was in the case to which it was possible for the jury to apply the instruction.    Very clearly the jury might not have believed, beyond a reasonable doubt, that Frank Bressler did not have the money wherewith to make the payment claimed by the defendant to have been made by him to the defendant, or that the defendant heard Smith demand him to return the note, and yet have believed that the defendant was guilty.    These, and the other circumstances in evidence, are not principal facts,—indispensable links in a chain.    They are only evidentiary facts tending to corroborate other evidence,—circumstances affording cumulative evidence,—and in that view, it is impossible that the instruction could have done any harm.    We have several times repeated that "the reasonable doubt the jury is permitted to entertain, must be as to the guilt of the accused on the whole evidence, and not as to any particular fact in the case." *Mullins* v. *The People*, 110 Ill. 42; *Leigh* v. *The People*, 113 id. 372; *Davis* v. *The People*, 114 id. 98.

*Sixth*—The sixth instruction, given at the instance of the People, is also excepted to.    It reads thus:

"The court instructs the jury, that although a defendant has a right to be sworn and to give testimony in his own behalf, the jury are not bound to believe his testimony, but they are bound to give it such weight as they believe it is

entitled to; and his credibility, and the weight to be attached to his testimony, are matters exclusively for the jury; and the defendant's interest in the result of the trial is a matter proper to be taken into consideration by the jury in determining what weight ought to be given to his testimony."

The objection taken to the instruction is, that it "does not confine the jury to the evidence, and limit their belief to the testimony." The statute permitting parties in criminal cases to testify in their own behalf, provides: "No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility." (Rev. Stat. 1874, chap. 38, sec. 426, title "Crim. Code.") Where the party to the suit testifies, and the jury know him to be such, as must have been the fact in the present case, there needs no further showing that he is a party to the suit, and the jury are authorized to consider to what extent that circumstance should affect his credibility. They are neither bound to believe him nor to disbelieve him, but in weighing his testimony they are to take into consideration the fact that it is testimony given by the defendant in the case. The instruction goes no further than this, and it is in harmony with *Bulliner* v. *The People*, 95 Ill. 407, and *Chambers* v. *The People*, 105 id. 415.

This instruction speaks of the evidence given by the defendant, only. It authorizes no conclusion to be reached that is not based on evidence, and it does not assume to state the law any further than that the fact that the evidence is that of the defendant, affects its credibility, so that what is said in the defendant's instructions numbered 3 and 13 could not reasonably be regarded by the jury as in conflict with this instruction or applicable to a different subject matter, but would naturally and properly be understood as supplementary, and

to be read and considered in connection with it. Those instructions are:

"3. The court instructs the jury that a juror, in a criminal case, ought not to condemn, unless the evidence excludes from his mind all reasonable doubt as to the guilt of the accused,—that is, unless he be so convinced by the evidence, no matter what the class of evidence of the defendant's guilt, that, as a prudent man, he would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interest, under circumstances where there was no compulsion resting upon him to act at all."

"13. The jury have no right to disregard the testimony of the defendant through mere caprice, or merely because he is the defendant. The law makes him a competent witness, and the jury are bound to consider his evidence, and give it such weight as they believe it is entitled to, and you are the sole judges of his credibility."

It is impossible, when these instructions are considered, as they should be, and as we doubt not were by the jury, in connection with the People's sixth instruction, that the defendant's rights could have been prejudiced by it.

On the question of the effect of other evidence as tending to impeach or sustain the defendant, the jury were fully instructed. The People's seventh instruction is:

"7. If you believe, from the evidence, that Peter Bressler, as a witness, has been successfully impeached on this trial, then the jury are at liberty to disregard his entire testimony, except so far as it has been corroborated by other competent and credible evidence, or by facts and circumstances proved on the trial."

And the tenth instruction, given at the instance of the defendant, is:

"10. The court instructs the jury that they are the sole judges of the facts in this case, and of the credit, if any, to be given to the respective witnesses who have testified; and

in passing on the credibility of such witnesses, the jury have a right to take into consideration not only their evidence itself, but their conduct, demeanor or bearing while testifying on the stand; their objects, purposes or designs, if any have been shown by the evidence, in so testifying; their feelings of prejudice against the defendant in this case, if any have been shown, and their means of knowing the facts and circumstances in proof, if any, tending to expose the feelings or purpose of such witness."

Every phase of the question thus seems to have been presented to the jury with sufficient fullness and accuracy. It is idle to say that the jury, giving heed to the instructions, could have felt authorized to disregard the evidence in determining what weight should be given to the evidence of the defendant. They would, of course, take into consideration the fact that he was the defendant, and precisely how far that should have effect, the jurors themselves must determine. No precise rule can be laid down prescribing how much or how little credence shall be given in such cases. It can not be held, as one portion of the argument of counsel for defendant would seem to tend to favor, that credence should be given or withheld as the other evidence should prove guilt or innocence of the crime charged, for that, in effect, would require that question to be determined before considering the evidence of the defendant, and then, if found guilty, his evidence could avail nothing, and if found innocent, it would be unnecessary.

*Seventh*—It is contended the court erred in refusing to give the eleventh instruction asked by the defendant. That instruction assumes to inform the jury "that although parol proof of the verbal admission of a party to a suit, when it appears that the admissions were understandingly made, affords satisfactory evidence, yet, as a general rule, the statements of a witness to the verbal admission of a party should be received with great caution," etc. But we have been un-

able to find any evidence in the record to which this instruction is applicable. The defendant is not proved to have made any verbal admissions affecting his guilt, which are controverted. The court gave, at the instance of the defendant, the following, which would seem to contain all that was necessary in cautioning the jury in respect to the liability of witnesses to be deceived in seeing or hearing:˙

"9. You are further instructed by the court, that in judging of the weight and importance to be given to the testimony of any witness or witnesses in this case, you should take into account their means of knowledge of the facts of which they speak, and you have a right to judge from your own common observation of the ability of persons to judge of given facts from given opportunities, and you are not obliged to accept as true the testimony of any witness or witnesses, if, in your opinion, judging from such common observation, they are or may be mistaken concerning the facts of which they speak."

*Eighth*—Complaint is made that the court refused to give the defendant's twenty-second instruction. That instruction is not accurately worded. It tells the jury that in certain contingencies they *should* disregard certain evidence. This is too strong,—*may* ought to have been used instead of *should*. But the only legal idea attempted to be conveyed in this instruction is sufficiently conveyed in the defendant's twentieth and twenty-first instructions, and it was very proper that the court should decline to repeat that idea.

*Ninth*—We have examined the series of instructions with deliberation and care, and we are of opinion that, as a whole, they present the law applicable to the case fully and fairly,— at least no prejudice is done the defendant in that regard. We can not believe that by any different wording of the instructions which might have been admissible under the law, a different effect would have been produced upon the minds of the jury, and a different verdict have been returned by them.

*Tenth*—The last objection urged which is to be considered is, that the record does not affirmatively show that the defendant was asked by the clerk, or by the court, if he had anything to say why sentence should not be pronounced, before the court gave judgment. The record affirmatively shows that the defendant made a motion for a new trial, which was argued by counsel, and then overruled by the court; that he then made a motion in arrest of judgment, which, being heard, was also overruled by the court, and the record then recites: "And now neither the said defendant, nor his counsel for him, saying anything further why the judgment of the court should not be pronounced 'against him on the verdict of guilty," etc., judgment is therefore thereupon rendered, etc. Had the formal question contended for been asked, under our practice, what could the prisoner have possibly said further to stay the pronouncing of judgment? We are aware of nothing. If the defendant or his counsel knew of anything which could have been then said to have that effect, they should have said it. They had the opportunity, and, on principle, must be deemed to have waived any right in that regard. Whether the omission here complained of would be fatal in a capital case, we will not now undertake to say; but under the modern practice the reason of the rule certainly does not apply to minor felonies. *Grady* v. *State,* 11 Ga. 253; *Sarah* v. *State,* 28 id. 576; *West* v. *State,* 2 Zabr. 212; *State* v. *Ball,* 27 Mo. 324.

*Eleventh*—Some minor objections have been urged which we do not deem it necessary to notice specifically. They have all, however, been considered, and we think them to be untenable. Objection is urged against the character of the impeaching evidence, because, it is alleged, the witnesses did not know what was the character of the defendant for truth, where he resided, nor among those with whom he was most conversant. This, as we understand, is directed against the effect of that evidence as an argument on the facts, rather

than against any ruling of the court in admitting it over that objection, for, as to most of the witnesses testifying to defendant's bad character, no objection seems to have been urged at the time, and the abstract fails to show that this particular objection was urged at any time, or that a motion was made to exclude evidence from the jury on that or any other ground.

*Twelfth*—The case has been argued with great ability, ingenuity and zeal, and we have endeavored to give to every argument and suggestion urged, all the consideration required for a correct conclusion. On no ground are we satisfied that the judgment should be reversed and a new trial ordered.

The question of larceny, here, as we have before herein indicated, is narrowed to that of whether Adam Smith or the defendant swore the truth. There is no manner of doubt that the defendant got the notes and carried them from Smith's office on the 28th of September, and that either Smith then gave them to him, or he then stole them. Smith says that he stole them. Either the defendant is guilty, or Smith has committed the grossest and most willful perjury. No apparent motive for this is shown, unless, indeed, we shall assume that he did it to steal the $300. His character is not impeached, or attempted to be impeached, by proof of bad reputation. His subsequent conduct in claiming immediately that the notes had been improperly taken, is consistent with his story. There is, on the other hand, inconsistency, to some extent, in the story of the defendant. The corroboration of the defendant is not direct,—it is only circumstantial, and not conclusive, even assuming the proof to be unquestionable. He *may* have had the $300 from his son, Frank Bressler, and have kept it. If Smith is not a perjurer, if he had it he did keep it. But there are circumstances tending, to some extent, how far the jury and the trial judge were the most competent to determine, to discredit the corroborating evidence, and those who saw Smith and the defendant on the

stand, and heard them, had facilities for forming opinions of their candor which we do not have.

The judgment is affirmed.

*Judgment affirmed.*