(No. 14372.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANTHONY JUDYCKI, Plaintiff in Error.

*Opinion filed February 22, 1922.*

1. CRIMINAL LAW—*when conduct of trial judge is improper.*  In a prosecution for burglary, where the identification of one of the alleged stolen articles found in the possession of the accused is not conclusive but is a question of fact for the jury, it is improper for the trial court to interrupt the examination of a witness for the People on that subject with a remark which clearly indicates to the jury that he considers the evidence of identification already given as sufficient.

2. SAME—*trial judge should not act as a prosecutor.*  The trial judge in a criminal case should not attempt to enact the dual role of prosecutor and judge as the two positions are inconsistent, and it is prejudicial error for him to so far interfere with the examination of witnesses as to clearly convey to the jury the impression that he believes the defendant to be guilty.

3. SAME—*when instruction as to effect of possession of stolen property is improper.*  An instruction in a burglary trial that the possession of stolen property, if recent and unexplained, is of itself sufficient to convict the defendant unless the inference of guilt is overcome by other evidence is improper where the alleged stolen article was not found in defendant's possession until three weeks after the crime, as in such case it is a question of fact for the jury whether such possession is sufficient to raise a presumption of guilt requiring evidence to overcome it.

4. SAME—*each particular fact relied upon by the People need not be proved beyond a reasonable doubt.*  The rule that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt in order to warrant a conviction does not require them to be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish guilt, nor does the rule that each and every material allegation of the indictment must be proved beyond a reasonable doubt make such a requirement.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

LEWIS A. HAUSCHILD, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and CHARLES E. SELBY, (EDWARD E. WILSON, CLYDE C. FISHER, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Anthony Judycki was convicted in the criminal court of Cook county of burglary, his age was found to be eighteen years, he was sentenced to imprisonment in the reformatory at Pontiac, and has sued out a writ of error to reverse the judgment.

The dwelling house of Mrs. Rose Carey, during her absence from 6:30 to 10:45 o'clock in the evening of January 5, 1921, was entered through the basement, the lock on the door being forced, and the sum of $85, which was in a bag hanging in a closet, two rings, a camera and an electric flashlight were stolen. Three weeks later, on January 26, 1921, about half an hour after midnight, two police officers went to the home of the plaintiff in error, where he lived with his mother and younger brother, Charles. They found a camera lying on the table in the dining room and a flashlight in the garage at the rear of the house. The money and rings were not found. The plaintiff in error was in bed and was told to get up and dress. The police officers testified that he was asked where the camera came from, and answered that he got it about two months before from a cousin who had since died, and that his mother said they had had the camera for six months. Mrs. Carey, and Mrs. Pierce, who lived with her, identified the camera and flashlight. The police officers testified that the plain-

tiff in error was questioned the next evening, January 27, about nine o'clock, at the police station, in the presence of the same officers, Downey and Sheffner, and Rudolph Lefco, a young man with no business who was accustomed to drive the police officers on the way to court, and that in this conversation the plaintiff in error said that he and Ed Bolgy entered Mrs. Carey's house while Andrew Lucas remained on guard outside, and that they got the camera and the money. The plaintiff in error testified that he did not commit the burglary or make the confession to which the officers and Lefco testified, but that he got the camera about a week before he was arrested from Andrew Lucas for three dollars which Lucas owed him, and that the flashlight belonged to his brother, Charles. Charles testified that the flashlight was his and he got it last vacation from William Oline, with whom he went to school. The evidence was sufficient to sustain the verdict unless prejudicial error occurred on the trial.

Complaint is made of the action of the judge in taking charge of and conducting the examination of the witnesses for the prosecution, asking leading and suggestive questions and bringing out incompetent testimony to the prejudice of the plaintiff in error. From the opening statement to the closing argument there was a fusillade of interrogations or remarks from the court, much of which was injurious to the defense.

During the examination of police officer Sheffner the court asked many questions of the witness. The witness testified that the camera was in the dining room, and the State's attorney produced a flashlight and asked the witness if he had ever seen it before. The court seized the opportunity to inquire about the flashlight, where it was found and what was said about it, and finally asked: "How did you happen to go to the barn? Did he say anything about the flashlight?" The officer answered, "That would be bringing in another matter." The court said, "Never

3C2—10

mind any other case." The plaintiff in error's attorney objected to the question and answer but the objection was overruled, and the court having by his officious question got before the jury the incompetent fact that there was another case against the defendant, contented himself with the remark: "The jury will pay no attention to that; strike it out,—about any other case; don't know anything about it."

In the cross-examination of the same witness the following occurred:

Mr. Hauschild: "Now, when was this third night when you had a conversation in which this young man is supposed to have stated to you, in your presence—

Mr. Henry: "I object.

The court: "Wait until he finishes the question.

Mr. Hauschild:—that he obtained the camera from the house at 9305 South Park avenue.

Mr. Henry: "Just a minute.

The court: "Objection sustained to the form of the question. The officer didn't say anything about any supposing. You are putting that question as though he supposed.

The witness: "I don't think there was any third conversation. It all happened at the same time. With reference to the house at 9305 South Park avenue Judycki said, 'Well, you have got it on me and I guess I might as well tell the truth.'

Mr. Hauschild: "He said that?

A. "Yes.

Q. "He told you that after Lucas was with him? Is that right?

A. "After Lucas right—was present at the time.

Q. "Ed Bolgy—

The court: "He told you that Lucas and Bolgy were with him?

A. "Yes, he did.

Q. "In this burglary?

A. "In this burglary."

The following interruption by the court occurred while the State's attorney was examining Lefco in regard to the alleged confession of the plaintiff in error at the police station:

The court: "Tell us what you heard said about this burglary, or anything else relative to the burglary of Mrs. Carey's place.

A. "He admitted—

Mr. Hauschild: "I object.

The court: "What did he say? You are getting as bad as a policeman.

Mr. Henry: "Simply answer the question.

The court: "What did he say? 'I have burglarized Mrs. Carey's house?'

Mr. Hauschild: "I object."

Again, during the examination in chief of the police lieutenant, Downey, the following occurred: The witness testified: "His mother came out and said, 'We have had that camera for six months.' Judycki told me that he got it. Judycki was there. That was while he was dressing.

The court: "She said that he had had that camera for six months?

A. "She said, 'We have had that camera for six months.'

Q. "What did he say then?

A. "Then we didn't talk very much on the camera at the time. I told him to go ahead and get his clothes on and go to the station. Then I told him that we had been looking for him on another case.

The court: "Wait a minute.

Mr. Hauschild: "If the court please.

The court: "Strike it out.

Mr. Hauschild: "I object to the answer. It is uncalled for.

The court: "Wait a minute. You don't need to make any objection. The statement of the lieutenant that he made is highly improper about looking for him for any

case and the jury will disregard it. And be careful in your manner in which you testify. Disregard this 'other case,' gentlemen. No other case. There is nothing about any other case. Go on."

In his closing argument the State's attorney made the following statement: "In this particular case we find that about two weeks after the commission of the burglary Lieut. Downey and Officer Sheffner went over to 9300 Calumet avenue, where the defendant, Judycki, lived. The lieutenant tells you that he was there on a certain mission. You must understand the State is confronted also with this fact: that it can't introduce evidence of another case." The defendant's attorney objected but the objection was not sustained.

The jury might well think from the action of the court that he regarded the trial as merely formal. He took the direction of the examination of the first witness and asked questions and interrupted her brief examination more than a dozen times. The second witness was Mrs. Pierce, who lived with Mrs. Carey and whose testimony was corroborative. The State's attorney showed her the camera, saying that he would show her a kodak and ask her whether or not—when the court interrupted, "I don't think we need argue on that. Didn't the woman say she knew the number?" The jury, of course, would draw the inference that the judge regarded Mrs. Carey's testimony as sufficient and no further evidence as to the camera was necessary. The State's attorney stated that the witness knew the same thing, and the court permitted her to be examined. The fact was that the camera produced bore the same number as a camera box at Mrs. Carey's house, and the conclusion was drawn that the camera found was therefore the camera stolen. Neither of the witnesses identified the camera except by the fact that it bore the same number as the box. Neither of them testified that she ever saw the number on the camera before January 26, and there was no evidence

as to any relation between the number on the box and that on the camera. The identification was therefore a question of fact for the jury, uninfluenced by the statement of the court and the necessary inference that he regarded the evidence as sufficient.

There were five witnesses for the prosecution, and the court, without any necessity for such action, took an active part in the examination of each of them. The next witness was a policeman, and by his cross-examination the court brought out the fact that the finding of the flashlight in the garage involved the plaintiff in error in another criminal matter.

These are not all the instances of the court's officious interference. He caused the witnesses to repeat circumstances unfavorable to the plaintiff in error. There could be no doubt in the minds of the jury as to the belief of the court or his hostile attitude to the plaintiff in error. A defendant cannot have a fair trial where the judge's belief in his guilt is shown by his actions and impressed on the jury. The purposes and modes of thought of the advocate and the judge are different and no person can successfully enact the dual role of prosecutor and judge. They are inconsistent. The plaintiff in error denied the alleged confessions, and the issue between him and the witnesses for the State should have been submitted to the jury without the weight of the judge's opinion cast into the scale against him.

Aside from these alleged confessions the only evidence tending to connect the plaintiff in error with the burglary was the possession of the camera. The court gave the following instruction to the jury:

"The recent and unexplained possession of stolen property, the proceeds of a burglary, by the defendant, if the evidence so shows, tends to establish his guilt of the offense of burglary, and is sufficient of itself to authorize a conviction of burglary unless the inference of guilt thereby

raised is overcome by other facts and circumstances in evidence, so as to raise in the minds of the jury a reasonable doubt of such guilt of such offense."

This instruction, in effect, directed a verdict of guilty if the jury believed that the camera found at the house was the stolen camera. The weight of the evidence should have been submitted to the jury. It is the recent and unexplained possession of stolen property which may be sufficient to establish guilt. In this case the possession was three weeks after the burglary, and the instruction told the jury that such possession was sufficient to justify a verdict of guilty unless overcome by other facts and circumstances in evidence. Evidence of this character is by no means conclusive but is stronger or weaker as the possession is more or less recent. The possession must be so recent as to indicate that the possessor must have taken the property, and where it is so remote in time as to have given fair opportunity to the thief to dispose of the goods and to the defendant to acquire them honestly, possession is slight, if any, evidence of guilt, and its weight is a question of fact for the consideration of the jury and not to be determined as a question of law by an instruction that the evidence is sufficient to convict. The instruction should not have told the jury that the evidence of recent possession in this case was sufficient, of itself, to authorize a conviction of burglary as a matter of law but should have left the question to the jury to determine as a question of fact. It was for the jury to draw the inference from the evidence, and to say, not as a matter of law but as a question of fact, whether the evidence of possession three weeks after the crime was sufficient to raise such a presumption of the plaintiff in error's guilt as must be overcome by other circumstances, or whether the remoteness of the time itself was sufficient to raise a reasonable doubt. In the case of *Rex* v. *Adams,* 3 C. & P. 600, possession of stolen property three months after it had been lost was held not such

recent possession as to put the prisoner on showing how he came by it, and in the case of possession twenty days after the theft the evidence was left to the jury. *Cockens' case,* 2 Lewin's C. C. 235.

Instruction No. 6 stated:

"The rule requiring the jury to be satisfied of the guilt of the defendant from the evidence beyond a reasonable doubt in order to warrant a conviction is complied with if, taking the testimony altogether, the jury are satisfied beyond a reasonable doubt that the defendant is guilty. The reasonable doubt that the jury is permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole evidence and not as to any particular fact in the case."

It is argued that the instruction is misleading because it conflicts with the principle of law that each and every material allegation of the indictment must be proved beyond a reasonable doubt. There is no such conflict. The rule requiring the jury to be satisfied of the defendant's guilt beyond a reasonable doubt in order to warrant a conviction does not require them to be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the defendant's guilt, nor does the rule that each and every material allegation of the indictment must be proved beyond a reasonable doubt require them to be satisfied beyond a reasonable doubt of each link in the chain of circumstances. It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are so proved to satisfy the jury, beyond a reasonable doubt, of the defendant's guilt. *Bressler* v. *People,* 117 Ill. 422; *Keating* v. *People,* 160 id. 480.

The judgment will be reversed and the cause remanded.
*Reversed and remanded.*