## GILPIN v. GILPIN.

1. DIVORCE — CHANCERY PRACTICE — VERDICT OF JURY.— In a divorce case tried by a jury, where, under the issues framed, one party charges upon the other the commission of a matrimonial offense, which the other party denies, the verdict of the jury is entitled to great weight, notwithstanding the statutory provision that like process, practice and proceedings shall be had in such cases as are usual in other cases in chancery; but to be binding upon the court such verdict must be sustained by evidence and instructions free from substantial error.

2. CRUELTY CHARGED — DEFENDANT A COMPETENT WITNESS — EXAMINATION.— Where the husband seeks a divorce from the wife on the ground of cruelty, and on the trial testifies to a conspiracy aided and abetted by the wife, in the consummation of which he was violently assaulted, the wife is a competent witness in her own behalf to everything material to the transaction said and done by any party; and also to explain or contradict any material thing imputed to her by any adverse witness. She may be asked directly, and may answer in the same manner, whether she made a certain declaration at the time of the assault attributed to her by the husband in his testimony.

3. PREJUDICING CHILDREN AGAINST FATHER — UNSWORN STATEMENTS OF A CHILD.— A charge made by the plaintiff that the defendant had sought to poison the minds of his children against him cannot be supported by a declaration of a small child of the parties, made to a third person and out of the presence of both parties, that his father was a thief, and his mother could put him in the penitentiary; that his mother had told him so. Nor was the unsworn statement of the child, that these remarks were based on what his mother had told him, admissible as showing his state of mind toward his father.

4. OBJECTIONS MADE TO TESTIMONY — MOTION TO STRIKE OUT.— Where such testimony has been admitted over repeated objections and exceptions, neither a motion to strike out, nor further objections and exceptions were necessary.

5. ALIMONY AND CUSTODY OF CHILDREN WITHOUT DIVORCE.— Defendant, by cross-complaint, may charge plaintiff with cruelty, and that he is unfit to have the custody of the children, and pray that the children be awarded to her, and for alimony and maintenance, though she does not ask for a divorce.

6. REVERSAL OF DECREE — ORDERS PRIOR TO FINAL DECREE.— In case of a reversal of a decree of divorce, whereby the custody of the children has been awarded to one of the parties until the divorce issue is finally settled, the trial court may make such temporary orders in reference to the custody and maintenance of the children and alimony for the wife as may be reasonable and proper, considering the circumstances of the parties.

7. ASSIGNMENTS OF ERROR — PUBLIC POLICY IN DIVORCE CASES.— The supreme court may review rulings upon the evidence and make them ground for reversal, though the assignments of error thereon are not specific, where such errors are gross and are fairly presented by the brief of counsel. In divorce cases public policy requires that all courts having jurisdiction of the proceedings shall be vigilant to prevent the obtaining of decrees of divorce by fraud, collusion, the admission of improper testimony or the exclusion of competent evidence.

8. BILL OF EXCEPTIONS — PRESUMPTION CONCERNING.— Where the bill of exceptions shows that appellee objected to the signing and sealing of it because not tendered in time, but does not show that the objection was true, and the trial judge overruled it, and signed the bill without restriction, it will be presumed that he did so properly, and that the bill is entitled to be considered for all purposes as to matters embraced in it.

9. INSTRUCTIONS NOT EXCEPTED TO.— Errors assigned to instructions to which no exceptions were taken are not ground of reversal.

*Error to Superior Court of Denver.*

THIS was an action by Ex-Gov. William Gilpin, plaintiff below, against his wife, formerly Mrs. Julia P. Dickerson. The parties were married in 1874. At the time of the marriage plaintiff was a bachelor, about fifty-nine years of age, and defendant a widow, about thirty-eight years of age, with four children,— one boy, about eight years old, named Sidney, and three girls, aged about four, six and ten years, respectively.

By this marriage there are three children, two of them twins, Willie and Marie, born in 1875, and the third, Louis, born in 1877.

The plaintiff in his complaint charged that defendant had been guilty of extreme cruelty towards him from almost the beginning of their married life; that she was subject to frequent outbursts of passion and ungovernable frenzy; that she made the home circle a scene of almost continual strife; that she taught his children to hate, despise and avoid him; that she entered into conspiracies with her relatives and friends to bereave him of his children, to deprive him of his fortune, seeking to accomplish these purposes by threats, intimidation and by declaring it to be their intention to take his life; that she had on two or three occasions violently assaulted and struck him with her hand, and with certain small weapons which happened to be at hand; that on one occasion she had caused him to be assaulted, struck and knocked down by her son, Sidney, then about twenty-one years of age; and that this assault and beating was in pursuance of an arrangement between defendant, her son and others to draw him into a quarrel, and take his life under color of self-defense. Plaintiff prayed to be divorced from defendant, and that he might have the care, custody and maintenance of their three children.

The defendant in her answer made specific denials of the acts of cruelty, and of the outbursts of passion

charged against her, except as the same were provoked by the gross misconduct of the plaintiff towards herself, her children and other members of her father's family. She also denied any intent or attempt to prejudice his children against him, or to deprive him of their society, and denied any and all combinations or conspiracies against his life, or his peace and happiness. In her cross-complaint defendant charged plaintiff with extreme cruelty towards herself and her children, specifying details of a most violent character; that plaintiff, by reason of his disordered fancy and ungovernable temper, his disposition to cruel and severe punishment, and his austere and intolerable demeanor, was unfit to have the care, custody and tuition of the infant children of plaintiff and defendant. She therefore prayed that the care, custody and education of said children might be decreed to her, with suitable alimony and maintenance to be paid by plaintiff, but she did not ask for a divorce. Plaintiff denied the charges made by defendant against him in her answer and cross-complaint. The pleadings are very lengthy, and no more of their substance is given in this statement than is necessary to a correct understanding of the opinion.

The issue for divorce was tried by a jury, as required by statute, and determined in favor of plaintiff. A motion for a new trial on this issue was denied; and on hearing to the court, on defendant's application for alimony and the custody of the children, the court denied the same, decreed a divorce and awarded the custody of the children to plaintiff. A subsequent application of defendant for a modification of the order touching the custody of the children was likewise denied. Defendant now brings the case to this court on writ of error; and complains that the trial court erred in receiving and in excluding testimony, in instructing the jury, in denying motion for a new trial and in entering judgment of divorce upon the verdict; also in awarding the custody of

the children to plaintiff instead of herself, and in refusing her alimony and suit money.

Messrs. WELLS, McNEAL & TAYLOR and THOS. MACON, for plaintiff in error.

Messrs. MARKHAM & DILLON and PATTERSON & THOMAS, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The defendant below having steadfastly resisted the granting of the divorce as well as the decree depriving her of the custody of the children, the first question necessary to be considered is whether or not there was error occurring at the trial which might have affected the verdict of the jury. Plaintiff's counsel strenuously insist that this court should not disturb the verdict in a case like this; that the jury, having an opportunity to see and hear the living witnesses, are better able than the appellate court to judge of the truth of matters of fact, especially when there are a large number of witnesses and much conflict in the testimony.

Whether the verdict in divorce cases is to be considered as a common-law verdict or advisory merely, as in cases of equitable cognizance, we need not determine at this time. Chapter 32 of the General Statutes provides, among other things, that "the  *  *  *  court, sitting as a court of chancery, shall have jurisdiction in all cases of divorce and alimony by this chapter allowed; and the like process, practice and proceedings shall be had as are usually had in other cases in chancery, except as is hereafter provided;  *  *  * " and that, "where the defendant shall appear and deny the charges in the complainant's bill alleged, the same shall be tried by a jury." Whatever may be the precise effect of a verdict in divorce cases, and whatever power the trial judge may possess over the same, we are clearly of the opinion that when

an issue is framed and submitted to a jury wherein one party charges and the other denies the commission of a matrimonial offense, the verdict returned thereon is entitled to great weight. Indeed, we are not prepared to say that under the statute it should not be held as conclusive as a common-law verdict upon the trial court as well as upon the appellate court. But it certainly is not entitled to greater consideration than verdicts in strictly common-law actions. Such verdicts, to be binding upon the courts, must be sustained by evidence and instructions free from substantial error. If competent evidence has been offered and excluded, if incompetent evidence has been admitted, or if the jury have been improperly instructed, and the party aggrieved by such rulings of the court has duly objected and excepted thereto, so that it clearly appears by the record that substantial error has been committed, the verdict should be set aside. The defendant having resisted the granting of the divorce to her husband, as well as the taking of her infant children from her care and custody, is entitled to have the rules of law by which these results have been accomplished subjected to the same critical review as in controversies concerning lands and tenements, goods and chattels or other valuable rights.

Certain material charges against defendant in plaintiff's complaint were to the effect that she had entered into a conspiracy whereby plaintiff was called out of his house at night, assaulted, and knocked down by defendant's son Sidney, and that defendant was present, aiding and abetting her son in that transaction. Plaintiff had testified fully upon this subject. He had sworn that, upon a sign from defendant, Sidney had struck him, and felled him to his knees, and that defendant had then called out: "Run, Sidney; he is armed, and will kill you." The defendant, in her answer, had specifically denied these charges; and when she was called as a wit-

ness, after giving certain testimony relative thereto, she was asked by her counsel, "Did you say, 'Run, Sidney; he is armed?'" Plaintiff's counsel objected to this question, and, the objection being sustained by the court, an exception was duly reserved by defendant's counsel. The record does not disclose upon what ground the objection was based, nor upon what ground it was sustained, and we must confess our inability to perceive any good reason for the ruling. The subject-matter of the testimony was most material. The plaintiff had given testimony in chief in regard to the matter. The exclamation of the defendant, if made, was part of the *res gestœ*, and tended to show that she was acting in concert with her son. To deny her the right to give her testimony in reference thereto in the amplest manner was certainly contrary to the rules of evidence, and may have greatly prejudiced her cause in the minds of the jury.

Again, plaintiff had charged in his complaint that defendant had sought to poison the minds of his children against him, to make them hate, despise and avoid him. In support of this allegation the plaintiff was permitted to give in evidence, against the objection and exception of the defendant, a conversation between the witness Elizabeth Owens, and the child Willie, when the child was about eight or nine years old, on an occasion when defendant was absent from her home, when plaintiff was in another part of the house, and while the witness was putting the child to bed. The witness testified to the effect that the child said his "papa was a thief, and everybody belonging to him, and his mamma could put them in the penitentiary; that his mamma said so." The record does not disclose upon what ground this evidence was offered or received, and we are unable to recall any rule, or exception to any rule of evidence, which would allow the admission of such hearsay testimony. In its very nature, such testimony was calculated to be most

prejudicial to the defendant's cause; and since it was not legal evidence, its admission to the jury must be held to be manifest error.

Counsel for plaintiff in their printed argument do not attempt to justify or excuse the trial court for the exclusion of the testimony in the one instance, nor for the admission of it in the other, as above set forth. The only defense attempted in this court is that the assignments of error based thereon "are not entitled to any consideration, because they are not specific." Without entering into a discussion of the practice of this court in respect to assignments of error, we are satisfied that the rules are liberal enough to enable us to consider and act upon the errors under consideration. In addition to the assignment of errors in the common form, counsel for appellant argued these objections in their first brief, and the printed abstract contains an index to the testimony of each witness, so that neither court nor counsel could have any difficulty in finding or understanding the matters assigned for error.

The laws of the state specify many causes for which divorces are allowed. In the opinion of many good people the family household may be thereby too easily broken up and destroyed. The institution of marriage lies at the foundation of our civilization. It is the safeguard of education and true religion, the promoter of public and private morals, and the conservator of social order. Public policy favors the continuance of the marriage relation, and the courts should not lend their influence to dissolve the same except in obedience to strict law. It does not follow because a married person has a legal ground of divorce that he or she is bound to assert the same in the courts, either as plaintiff, or as defendant by way of cross-complaint. The law favors the condonation of matrimonial offenses. Acting upon these principles, this court has adopted the equitable doctrine that a destitute wife, though having a statutory ground for

divorce, may nevertheless waive her right thereto and maintain a suit for alimony under certain circumstances. *Daniels v. Daniels*, 9 Colo. 147, and cases there cited.

We express no opinion upon the merits of this unfortunate controversy. What we have said has been in maintenance of defendant's legal right to have the law declared and enforced impartially, to the end that she should not be divorced from her husband, nor deprived of the society of her children, unless the law thus declared, and the evidence thus admitted and considered, should justify such results. We are aware that the ready question of modern public sentiment will be: "Why does not defendant allow plaintiff a divorce if his conduct has been as cruel and distasteful to her and her family as she herself alleges?" It is not necessary for us to answer this question. Still, it is not difficult to surmise reasons satisfactory to her, and perhaps to others. It is no concern of ours whether such reasons please the multitude or not; it is sufficient for the ear of justice that she is entitled to the enforcement of the law for the protection of herself and children in this regard. The fact that so many parties in divorce proceedings contend for nothing except money is no reason why the law should not be administered impartially when invoked by the few who do not regard lightly the sundering of the marriage tie or the loss of the society of their children.

The defendant, as appears from her professed religious views, has conscientious scruples against the granting of divorces on many of the grounds allowed by our statute. She is now over fifty years of age. She is the mother of two families of children. Gov. Gilpin, the plaintiff, now over seventy years of age, is the father of one of these families. He has long enjoyed large official honors, both civil and military. The defendant is also most respectably connected. Fortunately, both parties are possessed of a reasonable competency to meet the ordinary wants

of life in the high social position in which they live. Their condition and circumstances considered, even if some of their grievances are well founded, it should not be a matter of wonder that either of them should desire to avoid the unpleasant notoriety of being divorced.

It is said that the principal questions now remaining to be settled in this case relate to alimony and the custody of the children. Counsel have devoted a large share of their arguments to these questions, and it is suggested that their determination does not necessarily depend upon the result of the divorce issue. Nevertheless, plaintiff's counsel in their brief claim great advantage for their client in respect to alimony and the custody of the children on account of the verdict being in his favor; and we cannot ignore the fact that the verdict of the jury has a most important and often a controlling influence in respect to the future custody of children in divorce cases, especially when they have arrived at the ages of twelve and fourteen years, as in this case. The verdict in this case upon the issues as formed and tried tends directly to show the conduct of defendant to have been unmotherly as well as unwifelike, and thus necessarily does affect her claim to the custody of the children; hence she is entitled to insist that it shall be set aside, unless it was fairly obtained. If we were to shut our eyes to the errors occurring at the trial, and allow the decree of divorce to stand, to save trouble, expense and delay, we should be conscious of thus placing the defendant at a great disadvantage in respect to her claim to the custody of the children by the maintenance of a verdict obtained under erroneous rulings. As a matter of law, she is entitled to have her rights passed upon without being thus unjustly prejudiced. We are constrained, therefore, to say that the issue of divorce must be decided upon a trial free from substantial error, or abandoned altogether, before the future custody and control of the children can be properly provided for with due regard to the legal

rights and parental feelings of both father and mother. Until the divorce issue is settled the trial court may make such temporary orders in reference to the custody and maintenance of the children and alimony *pendente lite* as may be reasonable and proper, the circumstances of the parties considered. If there is any reason why the arrangement as to the temporary care and custody of the children as already decreed should not be continued the whole matter is subject to any change or modification, under the direction and reasonable discretion of the trial court. The views of this court upon questions of this kind have been expressed in several cases. *Cowan v. Cowan*, 10 Colo. 540; *Luthe v. Luthe*, 12 Colo. 421.

As the record before us does not show any exceptions to the instructions given by the trial court to the jury, the errors assigned thereon cannot be made ground of reversal. But as the case may be tried again, we deem it proper to say that the instructions preserved in this record, if excepted to, would not meet the approval of this court. One instruction leaves out of view the provocation which may have been given for the supposed misconduct; another leaves out of consideration the probability of condonation; and still another calls special attention to the conduct and demeanor of defendant, as asserted by plaintiff and his witnesses. We need not notice the instructions further, except to say that if, in a trial for divorce, it is necessary to investigate and expose in detail the events of thirteen years of domestic life, great care must be exercised in declaring the law applicable to such a controversy, else a very unsafe legal standard of matrimonial conduct might be established.

Plaintiff's objection to considering defendant's bill of exceptions for the purpose of showing errors occurring at the trial of the divorce issue is not well taken. It is true plaintiff's bill of exceptions shows that plaintiff objected to the signing and sealing of defendant's bill because the same was not tendered in time; but it does not

show that the objection thus made was true as a matter of fact, and, the trial judge having overruled the objection and signed defendant's bill without restrictions, we must presume that he did so in pursuance of authority, and that the defendant's bill of exceptions is entitled to be considered for all purposes as to the matters embraced therein, as well upon one issue as the other. The judgment of the superior court is reversed and the cause remanded.

### ON PETITION FOR REHEARING.

PER CURIAM. It is now contended by plaintiff's counsel that it was not error to refuse to allow defendant to answer the question: "Did you say, 'Run, Sidney; he is armed?'" The elementary authorities are uniform to the effect that such a question is perfectly legitimate at the stage of the examination at which it was propounded. The defendant was entitled to testify to everything material which was said and done by each and every party to the transaction under consideration as she remembered it. Having done this, she was also entitled to explain or contradict any language of material import, or any part thereof, which had been imputed to her by any adverse witness; and for this purpose her counsel had the right to ask her the question in the precise form he did. Not to have asked the question might have deprived her of the benefit of an explanation or contradiction of the language attributed to her, and so would have left opposing counsel free to insist in argument that she had not denied or explained the same. 1 Greenl. Ev. §§ 434, 435; 1 Starkie, Ev. *167–170; 1 Whart. Ev. §§ 498–503, and notes; 2 Best, Ev. §§ 641, 642; 2 Phil. Ev. 894, 895.

It is also insisted that it was not error to admit the conversation between the witness, Elizabeth Owens, and the child, Willie, about his father. It is urged that the testimony was competent to show the state of the child's mind towards his father; but no attempt is made to

maintain that it was proper to admit the child's unsworn declaration that his remark was based upon what his mother had told him. It is contended that defendant's counsel should have moved to strike out this objectionable part, and, if not sustained, should have excepted again. Whether or not defendant could have been thus adequately protected will appear from the course of the examination by plaintiff's counsel. After suggesting to the witness, by leading questions, that she had heard the child make a disrespectful remark about his father, the witness' attention was directly drawn to the time, place and occasion of such remark, and she was then asked if the child, at the time of making such remark, said anything about his mother. This question was answered affirmatively before the child's language, or the substance thereof, was sought to be introduced. So both court and counsel were fully advised, in advance of the admission of the testimony excepted to, that the child's remark about his father was a mere repetition of what his mother had told him. This testimony was admitted to the jury, over the repeated objections and exceptions of defendant's counsel. It is not very surprising that further objections and exceptions were not presented; the mischief was done. In this view of the examination, it seems impossible to maintain that the only purpose of eliciting this testimony was to show the state of the child's mind towards his father. The practice is by no means settled that defendant's counsel were bound to make further efforts to exclude the objectionable testimony in order to be protected in the appellate court. Matters of this kind have received the attention of the highest courts; and it has been held that when objections to testimony have been erroneously overruled and exceptions taken, the admission of further testimony of the same kind, under questions springing naturally and in immediate succession therefrom, and in direct connection therewith, will, under some circumstances, be held

erroneous, without additional objections or exceptions thereto; also that when testimony is improperly admitted which in its nature is calculated to excite the sympathies of jurors in favor of the party offering it, or to arouse their feelings against the opposite party, striking it out, or directing the jury not to consider it, will not always cure the error. Matters of this kind must generally be left to the discretion of the trial court; but instances may occur in which this discretion is not properly exercised, and then relief can only be had in the appellate court. *Barton v. Kane,* 17 Wis. 38; 2 Grah. & W. New Trials, 612–630; *Railway Co. v. Levy,* 59 Tex. 542; *Railroad Co. v. Baxter,* 32 Vt. 805; *McKee v. Mining Co.* 8 Colo. 392.

It is further urged that the rulings of the trial court upon these matters of evidence should not be adjudged erroneous because counsel did not state the reasons for the objections at the time of making them. General objections, or objections without specific grounds therefor being stated, may, as a general rule, be safely overruled, unless the testimony sought to be introduced is of such a character as to be inadmissible for any purpose; and the grounds of its inadmissibility must unmistakably appear or in some manner be brought to the attention of the court at the time of the ruling, and not be left to conjecture or inference, or its reception will not constitute cause for reversal. Thomp. Trials, §§ 693, 694–697, 2786; *Camden v. Doremus,* 3 How. 515; *Brown v. Weightman,* 62 Mich. 557. It will be observed by reference to our former opinion that the objection to the question, "Did you say 'Run, Sidney; he is armed?'" came from plaintiff's counsel, that no ground of objection was stated or suggested, and that the objection was sustained. This ruling was clearly erroneous under any condition of the foregoing rule; since, as we have seen, the evidence sought to be introduced was both competent and material, and the

question was perfectly legitimate, both in form and substance.

As to the testimony of the witness Owens, it is difficult to conceive that any further reason was necessary to be stated against the admission of the child's remark about his father, when by the course of the examination it had already been expressly disclosed that it was but a mere repetition of his mother's declaration. The reason seems obvious, without being stated, that the servant of the family, in a divorce suit, should not be permitted to testify what a mere child *said* the mother *said* about the father in the absence of both parties to the record.

The claim is renewed on this application that the assignments of error are not sufficiently specific, as required by the rules of this court, to entitle defendant to relief from any errors, committed by the admission of improper testimony against her or the exclusion of proper evidence in her behalf. The opinions of this court to which counsel have called our attention have not been overlooked. The original records, briefs and arguments, so far as the same have been preserved, as well as the opinions themselves in these cases, fail to show that the rules under consideration have ever before been invoked by counsel as a protection against errors appearing in the record relating to the exclusion or admission of testimony; while some of them show affirmatively that the court has sometimes availed itself of that part of the rule which provides that "the court may, in its discretion, notice any other errors appearing in the record." The only opinion which seems to declare that the court has no discretion to consider errors imperfectly assigned, because of the rules, is in the case of *Railroad Co. v. Smith*, 5 Colo. 160. In that case there was no discussion of the rules in the briefs or arguments of counsel; the rules were not invoked by appellee, but were taken advantage of by the court *ex mero motu*. So it may be that the language of the opinion which we consider in conflict with the rules was inadvertently used.

Resort to these rules by the court of its own motion has been rare, and the refusal of the court to consider errors relating to evidence because insufficiently assigned has not been frequent, while the consideration of such errors, in the exercise of proper discretion, as provided by the rules, has not been uncommon.

If it were necessary to give reasons for the exercise of such discretion in cases of this kind, it would not be difficult so to do. The dissolution of the marriage bond is against public policy. A decree of divorce will only be granted in pursuance of strict law. It cannot be granted by consent of the parties, nor upon a default, without the same strict proof required in case of a *bona fide* contest. Evidence cannot be waived, nor facts bearing upon the issue of divorce stipulated. It is the duty of all courts having jurisdiction of divorce proceedings to be vigilant to prevent the obtaining of decrees of divorce by fraud, collusion, the admission of improper testimony, or the exclusion of competent evidence. Some of the reasons for this strictness may be found in the former opinion in this case. Society, the public, the commonwealth, have an interest in the preservation of the marriage relation. In an important sense it may well be said there are three parties to every divorce proceeding — the husband, the wife, and the state; and in some instances a fourth — the children. In some jurisdictions counsel are provided to appear in behalf of the people to protect the interests of the state in divorce proceedings. In Colorado, and perhaps in most of the states, this responsibility is intrusted solely to the courts having jurisdiction of divorce causes. 2 Bish. Mar. & Div. ch. 16; 2 Rev. St. Ky. (1867) 19; Gen. St. Ky. (1873) 524; *Green v. Green,* 7 Ind. 113; 2 McCord, St. at Large, S. C. 733; St. 24 and 25 Vict. ch. 86, sec. 8.

The suggestion that the court may notice errors not specifically assigned, but that it may not notice them effectively by making them a ground of reversal in any

case, is not well founded.  No rule is necessary to enable this court to call attention to any matter appearing in the record of a cause with the view to prevent error on a retrial; but it is not to be assumed from this that we approve of the proceedings of the trial court in respect to matters of law or fact not noticed.  It is quite impracticable for the appellate court to discuss every question raised in a lengthy *nisi prius* record.  Upon a careful reconsideration of the views heretofore expressed, we see no occasion to change or modify them.  The petition for a rehearing is accordingly denied.

*Rehearing denied.*